■ In the Matter of Arnold O., an Incapacitated Person. James T. Towne Jr., as Guardian of Arnold O., Appellant; James O. et al., Respondents. [681 NYS2d 627] —Carpinello, J. Appeals (1) from an order of the Supreme Court (Teresi, J.), entered September 5, 1997 in Albany County, which, *inter alia*, partially granted petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 81, for guardian compensation and counsel fees, and (2) from an order of said court, entered December 4, 1997 in Albany County, which denied petitioner's motion for reconsideration.

In November 1993, petitioner was appointed as successor committee to Arnold O., an incapacitated paraplegic with a long history of severe mental illness. This appointment was subsequently changed to that of guardian pursuant to Mental Hygiene Law article 81. During his period of appointment, petitioner, an attorney, performed numerous services on Arnold O.'s behalf, which included arranging for his placement in appropriate healthcare facilities, ensuring that he received proper medical care and retaining separate counsel on his behalf to pursue claims against the State for injuries he sustained at several Office of Mental Health facilities (*see, Matter of Towne v County of Saratoga*, 255 AD2d 650).[1] As part of this litigation, petitioner participated in settlement negotia-

---

1. Petitioner has also been involved in a number of legal proceedings involving respondents James O. and Mildred O., Arnold O.'s brother and mother, respectively, who unsuccessfully sought to have petitioner removed as guardian (*see, Matter of Arnold O. [Mildred O.]*, 226 AD2d 866, *lv denied* 88 NY2d 810). For example, petitioner commenced a proceeding to determine the assets held by James O. while he served as committee for his brother and also became extensively involved in the resolution of numerous complaints

tions resulting in a net recovery of $1,819,203.92 to Arnold O., which was intended to be placed in a supplemental needs trust for his benefit.

Pursuant to Mental Hygiene Law § 81.28 (a), petitioner moved for guardian fees for the $3\frac{1}{2}$-year period he served as guardian between November 1993 and May 1997 in the amount of $132,210 (678 hours at the rate of $195 per hour), as well as guardian disbursements in the amount of $4,700.95. Petitioner also sought payment of $49,018 pursuant to Mental Hygiene Law § 81.10 for legal services rendered by his law firm during the same period, as well as $1,950.88 in disbursements. The total requested compensation was $187,879.83.

Supreme Court granted all requests for reimbursement of disbursements. With respect to counsel fees, the court determined that only 194.25 of the 302.75 charged hours were compensable at a rate of $125 per hour, totaling $24,281.25. It also determined that petitioner was entitled to be compensated at an hourly rate for only 211 hours of guardianship services at $100 per hour, totaling $21,100. For the remainder of the guardianship services, Supreme Court utilized SCPA 2309 as a guideline and calculated a single "annual commission" in the amount of $9,357 (based on the net proceeds of the settlement), which it included in petitioner's total award of $61,390.08, an amount less than one third of that requested. Petitioner appeals this order, as well as a subsequent order denying his motion for reconsideration.[2]

Beginning with Supreme Court's disposition of counsel fees, we find no impropriety in its assessment of "reasonable compensation" (Mental Hygiene Law § 81.10 [f]). Determination of counsel fees is discretionary (*see, Matter of Grace PP.*, 245 AD2d 824, *lv denied* 92 NY2d 807) and the court was not required to accept the attorney's representations of the time expended (*see, Matter of Vitole*, 215 AD2d 765). Here, Supreme Court found that many of the legal services rendered were of the type that were customarily performed by a guardian or were duplicated by other billing entries (*see, Matter of Coughlin*, 221 AD2d 676, 677). In any event, examining the services provided as a whole, we find no abuse of discretion.

Setting the amount of "reasonable" guardian compensation

---

respondents levied against local and State officials regarding the quality of Arnold O.'s care and treatment. In April 1995, petitioner sought to be removed as guardian for Arnold O. but this motion was denied.

2. In both his motion for reconsideration and brief on appeal, petitioner concedes the reasonableness of the reduced hourly rates for guardianship and counsel fees imposed by Supreme Court.

for the requested period pursuant to Mental Hygiene Law § 81.28 (a), however, is a far more troublesome matter, particularly because of the unique circumstances of this guardianship. The statute provides no definitive formula for fixing compensation. Its directive that the court take "into account the specific authority of the guardian to provide for the personal needs and/or property management for the incapacitated person" (Mental Hygiene Law § 81.28 [a]; *see*, Law Revision Commission Comments, McKinney's Cons Laws of NY, Book 34A, Mental Hygiene Law § 81.28, at 405) clearly anticipates that Mental Hygiene Law article 81 guardianships can involve a mix of both personal care to an incapacitated person and fiscal management of said person's assets.

For the entire 3½-year period of the subject application, Arnold O. was essentially without assets. Thus, virtually all of the guardianship services provided by petitioner related to Arnold O.'s extremely complicated healthcare arrangements, including placement in facilities in this State, as well as in Connecticut and Massachusetts. The record details petitioner's numerous personal visits with Arnold O., as well as extensive telephone calls with him and his healthcare providers, many of which were required by his frequent psychiatric crises and medical emergencies arising out of his paranoid schizophrenia and paraplegia.[3] Additionally, petitioner was exposed to excessive and inappropriate harassing contacts by James O. and Mildred O. Specifically, petitioner had to endure their threatening telephone calls to his personal residence (some of which were communicated to his family members), their "constant barrage of threats, insults and complaints" (*Matter of Arnold O. [Mildred O.]*, 226 AD2d 866, 867, *supra*) filed with healthcare providers, and meritless investigations initiated by them with no less than 27 State and Federal agencies. Indeed, the record certainly supports petitioner's contention that his guardianship position required "virtual daily" involvement during the relevant time period.

In determining the proper amount of guardianship compensation, Supreme Court divided the services rendered into those "customarily and normally performed by a guardian" and those which were "extraordinary". It compensated petitioner at a reduced hourly rate for the 211 hours of services which it found

---

**3.** Although not typical of his time spent as guardian for Arnold O., it is nonetheless indicative of petitioner's devotion to him that, on an emergency trip to Boston after learning that doctors were considering amputating his leg, petitioner slept in his vehicle in order to be available early the next morning to approve the surgery, if necessary.

extraordinary and awarded a single "annual commission" to compensate him for the 467 hours of services which it deemed to be customary, thereby disallowing petitioner's request for hourly compensation for the latter services. While it is true that Mental Hygiene Law § 81.28 (a) invites the application of SCPA 2309 to compute guardian compensation, we view that reference as appropriate in those guardianships where fiscal management of an incapacitated person's assets constitutes a substantial portion of the guardian's responsibilities.[4]

In this case, the Court of Claims settlement—the sum upon which Supreme Court calculated petitioner's annual commission—did not materialize until the end of the time period for which guardianship compensation was sought and none of petitioner's services related to fiscal management of this asset. Accordingly, we find that Supreme Court erred in applying SCPA 2309 for the purpose of calculating a single "annual commission" to compensate petitioner for the 467 hours of "customary" services he performed over the 3½-year period. Because of the exceptional facts of this case, we apply the hourly rate determined by Supreme Court to be reasonable ($100 per hour) to all hours petitioner devoted as guardian for Arnold O. and find that petitioner should have been compensated a total of $67,800 for his guardian services. Thus, after converting the $9,357 award of "commissions" into hourly compensation and taking into account the $21,100 appropriately awarded, petitioner is entitled to a net increase of guardian fees in the amount of $37,343.

Finally, with respect to petitioner's motion for reconsideration, to the extent that it has not been rendered moot by our modification of Supreme Court's award, we find no reason to conclude that the denial thereof constituted an abuse of discretion.

White, Spain and Graffeo, JJ., concur.

Cardona, P. J. (concurring in part and dissenting in part). I concur with the majority's determination of all the issues except one; in my opinion, upon this record the reasonableness of the guardian's compensation is a matter that Supreme Court

4. "[T]he statutory language does not mandate the court follow SCPA 2309 and indeed cautions that if 2309 is followed care must be taken to properly compensate the guardian for services not covered by 2309. SCPA 2309 and 2307, which set out a formula for compensating trustees and fiduciaries, *do not take into account the personal care component inherent in guardianships under MHL Article 81*" (*Matter of Pineda*, Sup Ct, New York County, May 28, 1997, Lippmann, J. [NYLJ, May 28, 1997, at 26, col 3] [emphasis supplied]).

is more appropriately equipped to resolve. While mindful of the extreme difficulties this guardianship proceeding has imposed upon petitioner and the considerable efforts expended by him, Supreme Court is more familiar with the intricacies of this complex case and should have the opportunity to reevaluate petitioner's request for guardianship compensation in light of our decision. Therefore, I would remit the matter to Supreme Court for that determination.

Ordered that the orders are modified, on the law and the facts, with costs to petitioner, by increasing the net amount of guardianship compensation awarded petitioner by $37,343, and, as so modified, affirmed.