■ In the Matter of ARNOLD O., a Person Alleged to be Incapacitated. JAMES T. TOWNE, JR., as Guardian of ARNOLD O., Appellant-Respondent; JOHN T. BISCONE, Respondent-Appellant. [719 NYS2d 174] —Carpinello, J. (1) Cross appeals from an order of the Supreme Court (Teresi, J.), entered February 24, 2000 in Albany County, which, *inter alia*, granted petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 81, for guardian compensation and counsel fees, and (2) appeal from an order of said court, entered Febru-

ary 29, 2000 in Albany County, which granted respondent's request for examiner fees.

We are once again called upon to review judicial determinations involving the affairs of Arnold O., who was first declared an "incompetent" in a 1987 proceeding under Mental Hygiene Law former article 78. Now at issue is the proper compensation due to petitioner, who was appointed Arnold O.'s successor guardian in 1993, and the proper compensation due to respondent, examiner of guardianship accounts in Albany County (*see*, Mental Hygiene Law § 81.32 [b]). Petitioner appeals from an order of Supreme Court which reduced his application for guardian fees for calendar year 1998, reduced his application for legal fees for services performed for Arnold O.'s benefit in 1998 and denied in its entirety his application for trustee commissions, all in response to objections filed by respondent. Respondent cross-appeals, arguing that the fees actually awarded to petitioner are excessive. Petitioner also appeals from an order of Supreme Court awarding respondent legal fees for reviewing his reports.

A brief synopsis of the history of this matter is warranted. Arnold O. is a paranoid schizophrenic who was rendered a paraplegic as a result of a fall through a second-story window while a resident at Capital District Psychiatric Center in the City of Albany. Suffering as he does from severe physical and mental impairments, Arnold O. has presented petitioner with unique challenges. Now a permanent resident of an out-of-State skilled nursing facility, his continuing behavioral problems require considerable intervention by petitioner, including numerous telephone calls and personal visits to the facility for meetings with Arnold O. personally and the professionals who care for him. These problems include episodes of slashing his bed, throwing his television on the floor, pulling out various tubes and intravenous lines and assaulting staff. Indicative of the level of petitioner's dedication to Arnold O. is his acquisition of an "800" telephone number for Arnold O. to reach him any hour of the day or night. Arnold O. takes advantage of this arrangement and regularly communicates with petitioner.

Further compounding the situation are certain members of Arnold O.'s family, namely, his brother and mother, who have each subjected petitioner and the health care professionals who care for Arnold O. to "a constant barrage of threats, insults and complaints" (*Matter of Arnold O.*, 226 AD2d 866, 867, *lv denied* 88 NY2d 810). These family members have interfered with petitioner's performance of his duties as guardian and

unsuccessfully sought his removal (*see, id.*). A 1998 report from the health care facility where Arnold O. then resided confirms that these familial problems continued as of that time. The report notes: "[Arnold O.'s] case presents as an extremely complicated one due to legal issues and inappropriate family intervention (threats, harassment towards staff). [Arnold O.'s] Legal Guardian maintains regular contact and visits on a frequent basis."

In addition to ensuring that Arnold O.'s medical, psychological and social needs were being adequately addressed, petitioner filed a personal injury lawsuit against the State to recover for the injuries Arnold O. suffered in his fall and for other injuries he sustained while under the State's care. These efforts resulted in a net recovery of $1.8 million. Prior to this recovery, Arnold O. was virtually without assets. After additional litigation and an unsuccessful appeal on the question of whether a Department of Social Services lien in excess of $500,000 had to be paid out of the recovery, an amount in excess of $1.2 million was ultimately placed in a supplemental needs trust for Arnold O.'s benefit (*see, Matter of Towne v County of Saratoga*, 255 AD2d 650; *see also*, EPTL 7-1.12 [a] [5]). In addition to being Arnold O.'s guardian, petitioner is the court-appointed trustee of this trust.

Turning to the merits of the instant appeals, we begin first with the issue of whether petitioner is entitled to trustee's commissions in the amount of $9,557.27 disallowed in their entirety by Supreme Court. Notably, on a prior appeal involving this guardianship, we held that care had to be taken in determining proper compensation when the guardianship involves "a mix of both personal care to an incapacitated person and fiscal management of said person's assets" (*Matter of Arnold O.*, 256 AD2d 764, 766). In disallowing these fees, Supreme Court adopted the arguments proffered by respondent to the effect that compensating petitioner for guardian services and permitting him to receive trustee's commissions would, in effect, amount to judicial approval of "double billing." We disagree.

Respondent's argument that payment of trustee's commissions would amount to a "double" recovery ignores the fact that in accounting to Supreme Court for each hour (or fraction thereof) that petitioner devoted to the supervision of Arnold O.'s *personal care*, he did not include time spent in fulfilling

his fiduciary duties as trustee of the trust.* As long as petitioner is compensated on an hourly basis for guardianship duties relating to Arnold O.'s personal care and he is separately awarded his statutory trustee's commissions for any additional and separate time devoted to his fiduciary responsibilities as trustee of the trust, there will be no "double" recovery based on "double billing."

Also troublesome to Supreme Court on this particular issue was the fact that the trust is professionally managed by an investment firm. Petitioner's decision to select a professional investment firm to assist him in the management of the significant trust assets is entirely prudent (*see, Matter of Axe,* 132 Misc 2d 137). Merely because these financial advisors have been compensated out of trust assets does not mean that petitioner should be deprived of his statutory commissions, since in all events petitioner bears the ultimate responsibility for investment decisions and in no event could he delegate that legal responsibility to the investment firm (*see, Matter of Newhoff,* 107 AD2d 417, *lv denied* 66 NY2d 605). Surely, it cannot be reasonably argued by anyone, including respondent, that petitioner would not be liable for any trust losses caused by a breach of his fiduciary duties. Finally, SCPA 2309 (2) provides that "a trustee *shall* be entitled to annual commissions" (emphasis supplied) at the statutory rates. Since Supreme Court has no discretion to deny trustee commissions under SCPA 2309 (*see, Matter of Saxton,* 274 AD2d 110, 121), we find that it erred in denying petitioner his trustee commissions.

We also find error in Supreme Court's reduction of petitioner's application for payment of legal services rendered on Arnold O.'s behalf. As with his trustee duties, petitioner never intended to include time spent in his professional capacity as an attorney in his accounting of time spent in the performance of his guardianship duties. Although the total bill for legal services rendered by petitioner's law firm for calendar year 1998 totaled $12,943.75, petitioner unilaterally reduced his request for reimbursement to $6,700. Supreme Court rejected even this reduced fee request, finding that much of petitioner's attorney time was unnecessarily devoted to what the court described as an "ill-advised" appeal involving the Department of Social Services lien (*see, Matter of Towne v County of Saratoga,* 255 AD2d 650, *supra*), and reduced the fee to $3,650.10.

---

* Petitioner acknowledges that any hours spent in the performance of his responsibilities as trustee mistakenly included in his accounting of time expended in furtherance of his guardianship responsibilities were properly disallowed by Supreme Court.

While Supreme Court would normally enjoy broad discretion in setting counsel fees in Mental Hygiene Law article 81 matters (*see, Ricciuti v Lombardi,* 256 AD2d 892; *Matter of Arnold O.,* 256 AD2d 764, 765, *supra*), we do not feel compelled to defer to Supreme Court on this issue because the legal services involve a matter which was previously before this Court. Having decided the appeal itself, we are intimately familiar with "the nature and complexity of the litigation [and] the time, effort and skill required for its resolution" (*Ricciuti v Lombardi, supra,* at 893). Conducting our own review, we find the compromised legal bill of $6,700 and related disbursements of $940.25 (which Supreme Court also disallowed in their entirety) to be eminently reasonable. Indeed, with in excess of $500,000 at issue, one could easily argue that a failure to have perfected the appeal would have constituted a·breach of petitioner's fiduciary duty to protect Arnold O.'s financial resources (*see,* Mental Hygiene Law § 81.20 [a] [6] [ii]). Accordingly, the compromised legal bill in the amount of $6,700 and the disbursements in the amount of $940.25 should have been approved. In so holding, we are cognizant of the argument advanced by respondent that petitioner should not be serving both as Arnold O.'s guardian and his attorney. Because of the unique circumstances of this case and because all of petitioner's compensation, whether as attorney or as guardian, must be approved by Supreme Court, we find that Supreme Court did not abuse its discretion in appointing petitioner as Arnold O.'s attorney.

The last objection interposed by respondent includes a matter with which we have dealt previously (*see, Matter of Arnold O., supra*). In sum, respondent contends that petitioner should not be compensated at the rate of $100 per hour for supervising Arnold O.'s personal needs. Respondent argues that petitioner should be paid at the rate of $25 per hour. Countenancing respondent's argument would, in effect, deprive Supreme Court of the necessary discretion to set guardianship compensation based upon the particular needs of each individual case. It would also preclude attorneys who accept guardianship assignments from being compensated at rates even approaching those that they otherwise charge for professional services. As we previously held and again reiterate, the hourly rate of $100 per hour for the guardianship services provided to this mentally ill paraplegic is reasonable (*see, id.,* at 767).

We also find no basis to interfere with Supreme Court's discretion in reducing the total compensation sought for guardianship services from $13,795 to $9,440, with one minor

exception. Supreme Court disallowed five hours of guardianship time for personal services rendered between July 9, 1998 and July 14, 1998 on the ground that these services constituted "legal work." However, petitioner never actually charged for these services and thus his total fee request did not include this $500 increment. This being the case, Supreme Court erred in deducting $500 from the total compensation due petitioner. Accordingly, the amount of guardian compensation should be increased by $500 to the sum of $9,940. Finally, we find no error in Supreme Court's acceptance of respondent's report or its approval of his request for counsel fees in the amount of $4,020.80. Considering the complexity of the issues involved in the case, we find the requisite "extraordinary circumstances" (22 NYCRR 806.17 [c] [2]) justifying the fee.

Crew III, J. P., Peters, Spain and Lahtinen, JJ., concur. Ordered that the order entered February 24, 2000 is modified, on the law, without costs, by reversing so much thereof as denied petitioner's application for trustee's commissions and counsel fees, and reduced his guardian compensation; trustee's commissions awarded in the amount of $9,557.27, counsel fees awarded in the amount of $6,700 and disbursements in the amount of $940.25, and guardian compensation increased to $9,940; and, as so modified, affirmed. Ordered that the order entered February 29, 2000 is affirmed, without costs.