OPINION OF THE COURT
George B. Ceresia, Jr., J.
Petitioner’s predecessor, National Commercial Bank and Trust Company, Albany, New York, by order dated January 20, 1961, was appointed committee of the property of W.J., an alleged incompetent person. Petitioner, as successor to National Commercial Bank, has continued in its role as court-appointed committee to the present. In 1992, article 81 of the Mental Hygiene Law was enacted, governing the appointment of adult guardians for incapacitated persons (see L 1992, ch 698, § 3, eff Apr. 1, 1993). At the same time, Mental Hygiene Law article 78, which had up until then governed the appointment of committees for incompetent persons, was repealed (see L 1992, ch 698, § 2). Petitioner has made the instant application to modify the order of appointment dated January 20, 1961 to enable petitioner to receive compensation pursuant to Mental Hygiene Law § 81.28. The court appointed attorney Robert M. Jacon, Esq., to serve as guardian ad litem for Mr. J. in the instant proceeding.[1] Mr. Jacon opposes the application for increased commissions, as does the United States Department of Veterans Affairs (DVA).[2] Among its arguments, the DVA maintains that petitioner’s compensation is governed by Mental Hygiene Law § 79.21, not Mental Hygiene Law § 81.28.
Petitioner asserts that it was appointed committee of Mr. J.’s property pursuant to former Mental Hygiene Law article 78, not Mental Hygiene Law article 79. It argues that its responsibilities, which are of long-term duration, are more akin to those of a trustee, and that therefore it is proper for petitioner to be awarded compensation, pursuant to Mental Hygiene Law § 81.28, in accordance with the rates of compensation set forth *659 in Surrogate’s Court Procedure Act § 2309.[3] Among its arguments, petitioner maintains that Mental Hygiene Law article 79 is outdated and should not be read to supersede the provisions of Mental Hygiene Law article 81. Petitioner indicates that even if the court were to find that Mental Hygiene Law § 79.21 was applicable (as argued by the DVA), subdivision (a) thereof makes provision for an award of additional compensation upon a showing that the guardian has rendered “extraordinary services.” Petitioner contends that extraordinary services have been rendered, and that therefore it is entitled to compensation as set forth in section 2309 of the Surrogate’s Court Procedure Act. Petitioner cites Matter of Arnold O. (256 AD2d 764 [3d Dept 1998]) and Matter of Sehr (169 Misc 2d 543 [Sur Ct, NY County 1996]) (both of which predate the most recent amendment of Mental Hygiene Law § 81.28) in support of its position. Petitioner also points out that subdivision (b) of Mental Hygiene Law § 79.21 provides for an award of additional compensation “as prescribed by article seventy-eight of this chapter.”[4] Petitioner then argues that since Mental Hygiene Law article 78 has been repealed, commissions should be fixed as set forth in Mental Hygiene Law § 81.28 and Surrogate’s Court Procedure Act § 2309.
The court notes that the original proceeding under which the petitioner was appointed committee of the property was com *660 menced in January 1961, and was brought by the attorney for the Veterans Administration, pursuant to article 81-A of what was then the New York Civil Practice Act. Civil Practice Act article 81-A included section 1384-k, which governed the compensation of a guardian. The provisions of Civil Practice Act § 1384-k have been carried forward with only slight revision to the present,[5] and are now embodied in Mental Hygiene Law § 79.21 which recites as follows:
“§ 79.21 Compensation of guardian[6]
“(a) Where a guardian has received only the benefits from the administration or income from such benefits, compensation payable to the guardian for administering the estate of a ward shall be fixed by the court not to exceed five per centum of the income of the ward during any year. In the event of extraordinary services rendered by such guardian the court may, upon petition and after hearing thereon, authorize additional compensation therefor, payable from the estate of the ward. Notice of such petition and hearing shall be given the proper office of the administration. No compensation shall be allowed on the corpus of an estate received from a preceding guardian. The guardian may be allowed from the estate of his ward reasonable premiums, not exceeding one per centum per annum upon the amount of the bond, paid by him to any corporate surety upon his bond.
“(b) Where a guardian has also received property of the ward other than benefits and income therefrom, additional compensation may be had, in the case of an incompetent ward, as prescribed by article seventy-eight of this chapter, and in the case of an infant ward, as prescribed by the surrogate’s court.” (Mental Hygiene Law § 79.21.)
*661 Mental Hygiene Law article 79 is still in effect and has not repealed. been
Counsel for the DVA points out that Mental Hygiene article 79 contains the following provision: Law
“Whenever, pursuant to any law of the United States or regulation of the administration, the director requires, prior to payment of benefits, that a guardian be appointed for a ward, such appointment shall be made in the manner hereinafter provided. The provisions of this article shall apply only to the wards of the administration and with respect to such wards, except as herein otherwise specifically provided, shall supersede any inconsistent provision of law relating to incompetents, conservatees or infants.” (Mental Hygiene Law § 79.03 [emphasis supplied].)
The court is mindful that in dealing with matters of statutory construction and/or legislative interpretation, “[w]here the statute is clear and unambiguous on its face, the legislation must be interpreted as it exists” (Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669, 674 [1988]; see also, Matter of Judge Rotenberg Educ. Ctr. v Maul, 91 NY2d 298, 303 [1998]). “Absent ambiguity the courts may not resort to rules of construction to broaden the scope and application of a statute” (Doctors Council at 674). “ ‘[W]here the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used’ ” (Matter of Raritan Dev. Corp. v Silva, 91 NY2d 98, 107 [1997] [emphasis omitted], quoting Patrolmen’s Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208 [1976], and citing Doctors Council, supra). In addition, a special statute which is in conflict with a general statute covering the same subject matter controls the case (see McKinney’s Cons Laws of NY, Book 1, Statutes § 397; Matter of Brusco v Braun, 84 NY2d 674, 681 [1994]).
Under all of the circumstances, the court finds that Mental Hygiene Law § 79.21 governs petitioner’s rate of compensation, not Mental Hygiene Law §.81.28.[7]
*662 The issue then becomes a question of whether the services furnished by the petitioner to its ward are extraordinary within the meaning of Mental Hygiene Law § 79.21 (a). An extraordinary service is one which is found to be “uncommon in character . . . [or] allocated to [a] specified activity” (see Matter of Erlandsen, 265 NY 155, 157 [1934]; see also, Matter of Townsend, 24 AD2d 93 [1st Dept 1965]).
The court is of the view that the inherent nature of a guardianship (as relevant here) is such that there is the possibility, depending upon the age and health of the guardian’s ward, that it will be of long duration. Where the guardianship is one of the property, it may require a lengthy period of financial oversight and supervision. In such circumstances, it is reasonable and foreseeable that long-term investment and long-term asset management may be necessary, and that assets may accumulate over time. The court mentions this only to emphasize that the State Legislature was presumably conscious of the foregoing when it adopted Mental Hygiene Law § 79.21 and its predecessor enactments (supra).
In support of the application, the petitioner has, in only the very broadest sense, drawn an analogy between the services it currently provides as guardian, and those performed by a trustee. No specific instances of particularized services of an extraordinary nature are identified. Nor has petitioner presented a cogent analysis to demonstrate how the services petitioner currently performs would not be reasonably contemplated within the context of the guardianship.[8] The court rejects the suggestion that the long duration of the guardianship and/or *663 the large size of the guardianship estate,[9] in and of themselves, require the court to find that extraordinary services have been rendered. Even assuming that the analogy which petitioner draws (with respect to the services performed by a trustee) is appropriate, petitioner has not demonstrated that the financial management services it provides as guardian are uncommon or extraordinary within the meaning of Mental Hygiene Law § 79.21 (Matter of Erlandsen, supra; compare, Matter of Smith, 274 App Div 867 [3d Dept 1948] [where the committee of an incompetent veteran was found to be entitled to additional compensation under Civil Practice Act § 1384-k]).
The court recognizes that, depending upon the nature of the estate and the needs of the ward, a guardian might require the assistance of a professional in carrying out the guardian’s duties. Where such circumstances were present and the facts so warranted, the court would not hesitate to approve the hiring of a professional, and the making of an award of reasonable compensation. As relevant here, this might include services involving financial and investment expertise beyond the ken of the ordinary layperson. In this instance however, the court is of the view that petitioner has failed to adequately describe or quantify the specific services it provides beyond the financial management duties inherent in a guardianship. Nor has petitioner adequately demonstrated the value of such services.
Lastly, the court finds that the petitioner has not presented sufficient evidence in its petition and supporting papers to justify an award under Mental Hygiene Law § 79.21 (b) (supra).
The court concludes that the petition must be denied and dismissed. Accordingly, relief in the form of an award of attorney’s fees to the petitioner must also be denied.
The court will defer a review and determination of the fees of the guardian ad litem until the conclusion of the companion Mental Hygiene Law article 81 proceeding.

. In an ancillary but related matter, Mr. Jacon, in carrying out his responsibilities as guardian ad litem, visited Mr. J. at the facility where he resides. Mr. Jacon subsequently raised concerns with respect to certain aspects of Mr. J.’s living conditions. As a consequence, the court, by order dated December 16, 2004, authorized Mr. Jacon to commence a proceeding for the appointment of a guardian of the person of Mr. J. under Mental Hygiene Law article 81.

. Mr. J. is a recipient of veterans benefits and, as such, falls within the definition of the term “ward” set forth in Mental Hygiene Law § 79.01. By virtue of Mental Hygiene Law § 79.39, the DVA is deemed to be an interested party with respect to the instant proceeding.

. The court notes that section 81.28 (former [a]) of the Mental Hygiene Law recited as follows:
“(a) The court shall establish, and may from time to time modify, a plan for the reasonable compensation of the guardian. The plan for compensation of the guardian may he similar to the compensation of a trustee pursuant to section two thousand three hundred nine of the surrogate’s court procedure act; however, the plan must take into account the specific authority of the guardian to provide for the personal needs and/or property management for the incapacitated person” (emphasis supplied).
While the instant application was sub judice, Mental Hygiene Law § 81.28 was amended to eliminate the reference to Surrogate’s Court Procedure Act § 2309. Subdivision (a) now recites as follows:
“(a) The court shall establish, and may from time to time modify, a plan for the reasonable compensation of the guardian or guardians. The plan for compensation of such guardian must take into account the specific authority of the guardian or guardians to provide for the personal needs and/or property management for the incapacitated person, and the services provided to the incapacitated person by such guardian.” (See L 2004, ch 438, eff Dec. 13, 2004.)

. Article 78, as noted, was repealed and replaced with Mental Hygiene Law article 81 (L 1992, ch 698, §§ 2, 3).

. Specifically, the Civil Practice Act was repealed in 1962, and replaced with the current Civil Practice Law and Rules (see L 1962, ch 308, eff Sept. 1, 1963). As a part of statutory restructuring, the provisions of Civil Practice Act article 81-A were carried over into a new article 5-B of the Mental Hygiene Law (see L 1962, ch 310). Section 115-j of the Mental Hygiene Law, which governed compensation of guardians of incompetent veterans (and which was almost identical to Civil Practice Act § 1384-k) remained in effect until 1972 when it was revised and renumbered as Mental Hygiene Law § 79.21 (see L 1972, ch 251).

. The term “guardian” means any person acting as fiduciary for a ward (see Mental Hygiene Law § 79.01). This would include the petitioner, as committee of the property of Mr. J.

. As previously noted, the court had issued an order authorizing the guardian ad litem to commence a proceeding pursuant to Mental Hygiene Law article 81 to appoint a guardian of the person of Mr. J. Mental Hygiene Law article 79 appears to be expressly applicable only in situations where the director of veterans affairs requires, prior to payment of benefits, that a guardian be appointed for an incompetent veteran (see Mental Hygiene Law *662 § 79.03). In the case at bar, that was accomplished in 1961 when petitioner was appointed committee of Mr. J.’s property. Notably, there could be many other situations where a veteran receiving benefits might need or require the assistance of a court-appointed fiduciary. The court discerns no express prohibition with regard to the appointment of a guardian of the person of a veteran who is under disability within the meaning of Mental Hygiene Law article 81. In the case of a direct conflict, the court would agree that the provisions of Mental Hygiene Law article 79 supersede any inconsistent provision of law.

. In fact, the most detailed explanation of the need for increased compensation is found in the affidavit of petitioner’s senior vice-president, who indicates in conclusory fashion that the application is based upon ongoing property management responsibilities, the highly regulated financial industry, a high standard of professional conduct, and significant reporting requirements. No other information to support petitioner’s claim with respect to the performance of extraordinary services is furnished.

. The moving papers indicate that Mr. J.’s estate is currently valued at over $1,021,483.