Matter of Karissa W.
2026 NY Slip Op 03490
June 4, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Karissa W., An Incapacitated Person. Douglas A. Eldridge, as Guardian of the Property of Karissa W., Appellant; Karissa W., Respondent.

Decided and Entered:June 4, 2026
CV-25-0088
Calendar Date: April 30, 2026
Before: Pritzker, J.P., Ceresia, Fisher, Mcshan And Corcoran, JJ.

Douglas A. Eldridge, Delmar, appellant pro se.

[*1]
Fisher, J.
Appeal from an order of the Supreme Court (Michael Cuevas, J.), entered December 30, 2024 in Schenectady County, which, in a proceeding pursuant to Mental Hygiene Law article 81, partially denied petitioner's motion for, among other things, an order approving his request for commissions.
In 2012, petitioner was originally appointed as the guardian of the person and property of respondent, an incapacitated person within the meaning of Mental Hygiene Law § 81.02 (b).FN1 At the time of the appointment, respondent was receiving monthly annuity payments as the result of a personal injury settlement. As relevant here, the guardianship order granted petitioner, an attorney, certain powers relating to respondent's banking and finances — including control over the bank accounts where the annuity proceeds were being deposited. Petitioner continued to manage respondent's bank accounts without incident until 2023, when a new bank acquired the bank maintaining respondent's accounts and refused to honor the guardianship order until it could be "recertified." As a result, petitioner moved to recertify the existing guardianship order and subsequently moved again to seek approval of payment for services as guardian for 2023 and part of 2024. Following a hearing on both motions and examination of the 2023 annual report, Supreme Court issued an order which appointed petitioner as temporary guardian of the property of respondent and partially granted certain commissions and compensation sought by petitioner. Petitioner appeals.
On appeal, petitioner raises two types of challenges relating to Supreme Court's order. First, petitioner contends that Supreme Court erred in modifying the terms of the guardianship. We find this contention to have merit. As petitioner was appointed guardian in 2012, there was no basis to appoint a temporary guardian (see Mental Hygiene Law § 81.23 [a]). Nor was there a basis to remove the guardian (see Mental Hygiene Law § 81.35). Although a court may terminate or modify a guardian's powers upon a showing that, "for some other reason, . . . the guardian is no longer necessary . . . or the powers of the guardian should be modified based upon changes in the circumstances of the incapacitated person" (Mental Hygiene Law § 81.36 [a] [4]), such application cannot be made sua sponte, but must "be made by the guardian, the incapacitated person, or any person entitled to commence a proceeding under this article" (Mental Hygiene Law § 81.36 [b]; see Mental Hygiene Law § 81.06; Matter of Angeliki K. [Fanny K.], 183 AD3d 733, 734 [2d Dept 2020]; Matter of William J.J., 32 AD3d 517, 519 [2d Dept 2006]; see also Mental Hygiene Law § 81.35). Nevertheless, when authorizing the powers that may be exercised by a guardian of the property, courts are to employ "the least restrictive form of intervention," taking into consideration, among other things, the incapacitated "person's wishes, preferences, and desires with regard to managing the activities of daily living[*2]" (Mental Hygiene Law § 81.21 [a]).
Here, there was no request before Supreme Court to modify the terms of the guardianship, as petitioner moved to continue the same terms of the original order to satisfy the requests of the new banking institution — specifically, petitioner's access to "all bank accounts, annuity payments, entitlements and other financial resources in [respondent's] possession or payable to her." However, the order issued by Supreme Court failed to contain this language and otherwise did not conform to the requirements of the statute (see Mental Hygiene Law §§ 81.15 [c]; 81.16). To the extent that this order is further interpreted as increasing the powers of the guardian by requiring petitioner to now pay certain monthly expenses that respondent already successfully handles on her own, we agree with petitioner that the record does not support this change as being the least restrictive form of intervention (see Mental Hygiene Law § 81.21 [a]). Accordingly, this portion of Supreme Court's order must be reversed and vacated.
Next, petitioner challenges the portion of Supreme Court's order awarding him partial commissions and compensation. Specifically, petitioner contends that Supreme Court erred by "unilaterally" reducing his commissions and compensation, without prior notice before the hearing, and outside the compensation plan established at the outset of his guardianship. Trial courts are authorized to award "reasonable compensation" to a guardian (Mental Hygiene Law § 81.28 [a]), but "[i]f the court finds that the guardian has failed to discharge his or her duties satisfactorily in any respect, the court may deny or reduce the compensation which would otherwise be allowed" (Mental Hygiene Law § 81.28 [b]). In awarding commissions, a trial court may rely on the formula in SCPA 2307 or 2309, as long as the total award constitutes reasonable compensation for the guardian's services because neither formula "take[s] into account the personal care component inherent in guardianships under" article 81 of the Mental Hygiene Law (Matter of Arnold O., 256 AD2d 764, 767 n 4 [3d Dept 1998] [internal quotation marks, emphasis and citation omitted]; see Matter of Krausz, 204 AD3d 500, 500-501 [1st Dept 2022]). Where, as here, "a guardian acts in a dual capacity, it is the guardian's burden in seeking counsel fees to demonstrate that those services were not performed in the role as guardian" (Matter of James H. Supplemental Needs Trusts, 194 AD3d 1167, 1170 [3d Dept 2021] [internal quotation marks, brackets, ellipsis and citations omitted], lv dismissed 37 NY3d 1137 [2022]; see Matter of Ellman, 7 AD3d 423, 424 [1st Dept 2004]). Trial courts possess "broad discretion" in determining an award of counsel fees in a guardianship proceeding (Matter of Judi B. [Erin B.A.], 238 AD3d 1142, 1143 [2d Dept 2025] [internal quotation marks and citation omitted]), and are "not required to accept the attorney's representations of the time expended" and [*3]may reduce or deny claims for legal services which "were of the type that were customarily performed by a guardian" (Matter of Arnold O., 256 AD2d at 765; see Matter of Alice D. [Lupoli], 113 AD3d 609, 613 [2d Dept 2014]).
Here, although we do not take issue with the methodology employed by Supreme Court in awarding commissions or its explanation of its award of counsel fees (see generally Matter of Judi B. [Erin B.A.], 238 AD3d at 1143; Matter of Garrasi, 91 AD3d 1085, 1086 [3d Dept 2012]), we are constrained to agree with petitioner that the matter must be remitted for a hearing to explore whether such award constituted reasonable compensation (see Matter of Alice D. [Lupoli], 113 AD3d at 614; Matter of Eggleston [Jennifer D.], 88 AD3d 706, 707 [2d Dept 2011]). Notably, there is no finding that petitioner failed to satisfactorily discharge his duties as guardian (see Mental Hygiene Law § 81.28 [b]), and the lack of notice that his applications for compensation were being challenged before the hearing prevented petitioner from offering the plan for compensation that was purportedly put into place at the time of his appointment as guardian (cf. Matter of Krausz, 204 AD3d at 501). We are also concerned that Supreme Court calculated the commissions for 2024 on "presumably" the same figures as recorded in the 2023 annual report — even though the figures from the 2022 annual report appear to differ from the 2023 annual report, indicating that the figures may not be identical year after year.FN2 Accordingly, the remaining portion of Supreme Court's order must also be reversed and vacated.
In remitting the matter, we find it prudent to acknowledge that we interpret portions of the hearing and the order issued by Supreme Court to reflect some level of hesitation toward petitioner continuing to serve as respondent's guardian. Petitioner's dedication to respondent's best interests are borne of good intentions, and a special bond has mutually developed over years of accumulating trust and rapport — which is a hope when appointing a guardian. But it is also a statutory requirement (see Mental Hygiene Law § 81.20 [a] [3]), and, to that end, Supreme Court may, upon a proper application by an authorized individual or entity, modify either a plan for the reasonable compensation of a guardian or the powers of a guardian (see Mental Hygiene Law §§ 81.28 [a]; 81.36 [a], [b]). Although respondent indicated during the hearing that she did not want an attorney other than petitioner to represent her, Supreme Court should consider on remittal that, even though a "person refuses the assistance of counsel, the court may, nevertheless, appoint counsel if the court is not satisfied that the person is capable of making an informed decision regarding the appointment of counsel" (Mental Hygiene Law § 81.10 [d]). We have examined petitioner's remaining contentions and have found them to be without merit, academic or not properly before us.
Pritzker, J.P., Ceresia, McShan and Corcoran[*4], JJ., concur.
ORDERED that the order is reversed, on the law and the facts, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1
The guardianship had been "extended" in 2018, but such order was not included in the record on appeal.

Footnote 2
The record only contains the 2022 annual report — which is not subject to this appeal — and does not contain the 2023 annual report. Nonetheless, the figures contained in Supreme Court's calculation of the 2023 commissions do not match the figures contained in the 2022 annual report, indicating the figures are not the same each year.