(January 24, 2017)

■ In the Matter of MARK S. GOLDSTEIN, Nonparty Appellant, v WILLIAM D. ZABEL, Nonparty Appellant. [45 NYS3d 432]—

Orders, Supreme Court, Bronx County (Howard H. Sherman, J.), entered March 23, 2015, which, to the extent appealed from as limited by the briefs, fixed nonparty appellant's guardianship commission at $100,000, unanimously affirmed, with costs.

This appeal calls upon us to consider the relationship between the Surrogate's Court Procedure Act and article 81 of the Mental Hygiene Law where the order and judgment originally appointing a guardian in an article 81 proceeding directs that the guardian "shall" be compensated in accordance with the guidelines set forth in SCPA 2307. We find that when the motion court awarded a final fee, it appropriately considered whether application of those guidelines would result in compensation that was not reasonable, given the very short duration of the guardianship and notwithstanding that the guardian satisfactorily performed his services. We hold that, regardless of the plan initially established for an article 81 guardian's compensation in the order and judgment of appointment, under Mental Hygiene Law § 81.28 the court has and retains the authority to modify its plan to insure that the guardian's compensation is reasonable under the circumstances of a particular case. The motion court, in judicially settling the guardian's account by awarding him compensation of $100,000, instead of the almost $700,000 fee that would have resulted from the strict application of SCPA 2307, providently exercised its discretion and it did not violate the doctrine of law of the case.

The underlying article 81 proceeding was commenced by three petitioners who sought the appointment of a guardian for Celia Ascher. The petitioners, Neil Smollett (Ascher's great-nephew by marriage, who lives outside the United States), William D. Zabel, Esq. (the attorney who prepared her will), and Theodore J. Luty (a trusted friend), claimed that Ascher, then 93 years old, was no longer able to attend to her own care or manage her financial affairs. Zabel sought to be appointed the guardian of Ascher's property, and Luty sought appointment as the guardian of her person. Nonparty appellant, Mark S. Goldstein, Esq., an attorney and certified public accountant, was originally appointed the court evaluator to investigate the claims in the petition (Mental Hygiene Law § 81.09). Goldstein prepared a report and participated in the testimonial hearing that ensued. It was determined that Ascher, a Holocaust survivor, had been hospitalized and then moved to a nursing home. She suffered from outbursts, had dementia, and was believed to be a danger to herself. She was a widow, had no close relatives, and had significant assets. After adjudicating Ascher an incompetent person, the court considered who would be best suited to be her guardian. Taking into account Ascher's physical and mental state, as well as her finances, the court decided that Luty and Goldstein would serve as co-guardians of the person and that Goldstein would be Ascher's temporary

guardian of the property. The property Goldstein was ordered to manage and safeguard was believed to be extensive, given that Ascher had been a very successful art curator and collector of fine art. During her lifetime, Ascher had acquired, then donated millions of dollars' worth of original paintings to a museum in New York, and there was reason to believe she still possessed valuable artwork and other objets d'art in her apartment. Despite having several offshore accounts, Ascher was in arrears in paying bills, and she owed millions of dollars in unpaid taxes. The trial court, in its decision and order dated February 5, 2014, in which it found that Ascher was in need of a guardian of the person and property, directed that the co-guardians' compensation would be "as is provided under § 2307 of the Surrogate[']s Court Procedure Act and as approved by the Court." The court did not, however, specify in that order, or in the order of appointment dated February 13, 2014, how Goldstein would be compensated for serving as Ascher's temporary property guardian.

During the period in which he served as temporary guardian, Goldstein secured Ascher's cash assets, securities and millions of dollars of personal property, including valuable artwork. He performed an inventory of her apartment and hired a guard to protect its valuable contents, since the apartment was empty and had no security system. Among its contents were eight of the paintings that Ascher had previously donated to a museum in Denmark, pursuant to an agreement under which she retained a life estate. Goldstein had necessary repairs made to the plumbing in Ascher's apartment and secured some valuables in a safe deposit box. He also began to investigate issues related to Ascher's medical care. The record reflects that Goldstein took his appointment seriously, and swiftly performed tasks that safeguarded Ascher's assets. He served as Ascher's temporary guardian from February 13, 2014 until March 20, 2014, a period of a little over one month.

Thereafter, the trial court appointed Goldstein as Ascher's full guardian of her person and property, including any life estate, an apparent reference to the paintings that were in her apartment. Although there is some disagreement between Goldstein and nonparty respondent, Zabel, about whether that artwork was insured and the Danish museum refused to make arrangements for the art's safe transport, the actions Goldstein took with respect to the storage and safekeeping of those pieces were within the powers enumerated in his order of appointment. In addition to being the property guardian, Goldstein was also designated the person whose decisions about Ascher's

medical care would be "conclusive and determinative." In its order and judgment of appointment entered March 5, 2014, the court set Goldstein's compensation in accordance with SCPA 2307 and ordered him to obtain a $21 million bond. Once he obtained the bond and filed his commission on March 20, 2014, Goldstein qualified as Ascher's full guardian. Ascher died three weeks later, on April 8, 2014, and Zabel was appointed the preliminary executor of her estate on May 6, 2014.

In August 2014, Goldstein sought to have his final account judicially approved. Since the order appointing him as temporary guardian had not provided for any compensation, Goldstein prepared an affirmation of the services he had provided during the time in which he served in that capacity. For that time period, Goldstein sought compensation based upon quantum meruit, providing the number of hours he worked and information about his customary fee. Goldstein stated that he had spent a total of 187.8 hours serving as Ascher's temporary guardian, and that, based upon his usual rate of $495 per hour, $92,961 plus disbursements of $474.50 should be approved. Although Goldstein was awarded the lesser sum of $64,450 plus disbursements for the temporary guardianship, that award is not challenged on appeal.

As Ascher's full guardian, however, Goldstein sought a commission of $695,106.58. In his final account, Goldstein indicated that the accounting was for the period January 31, 2014 through April 30, 2014, which encompasses both the time he served as full guardian and the time he served as temporary guardian. Goldstein provided the referee appointed to review the final accounting with several bank statements beginning December 2013. In reporting her calculations to the court, the referee confirmed the mathematical accuracy of the fees Goldstein sought to have approved, based upon Ascher's total assets of $33,055,329.13 during the entire accounting period (i.e., whether Goldstein served as temporary or full guardian). Goldstein did not include the offshore accounts, but included the paintings in which Ascher had maintained a life estate.

Although he did not maintain any time records for the period in which he served as Ascher's full guardian (i.e., starting March 20, 2014), Goldstein provided a narrative description of what services he had provided from the date he qualified until Ascher's death. Among the services identified by him were his efforts to obtain the bond that the trial court had ordered, investigating Ascher's offshore accounts and tax related matters, locating statements concerning those accounts, contacting Zabel, arranging a medical consult for Ascher, researching

alternative residential facilities for her, and preparing his final account. Zabel, by now the executor, filed objections to the final account, vigorously contesting the commission Goldstein sought as excessive and, in some cases, duplicative of the fees he sought as Ascher's temporary guardian.

The motion court judicially settled the final account by order entered March 11, 2015. In a separate order, issued in conjunction therewith, the court lauded Goldstein's efforts in immediately preserving Ascher's assets, noting that the assets were of a "substantial and varied" nature and that had Ascher lived a for a longer period of time, the tasks to be fully resolved by the guardian "were truly daunting and required unique abilities." The motion court, however, found that the $695,106.58 Goldstein was seeking would be an "extraordinary commission . . . which in the context of a permanent Guardianship which lasted less than three weeks is neither reasonable nor justifiable." The court stated that "mechanical application of the formula fixed in the Judgment of appointment" was unwarranted where it resulted either in inadequate compensation or, as in this case, "an unjustifiable windfall which would not constitute reasonable compensation for the tasks completed." In setting Goldstein's fees as temporary guardian, the court accepted Goldstein's recitation of the hours he spent, as set forth in his affirmation of services, but used the lower hourly fee $350. Goldstein contends that the $100,000 fixed as compensation for his services as Ascher's permanent property guardian is inadequate. Goldstein does not explain how the compensation is inadequate. Instead, his principal argument is that the amount the motion court approved of is not what he expected to receive when he accepted the court's appointment as Ascher's full guardian. He also argues that in the absence of any finding of misfeasance by him, there was no basis for the motion court to deny him the full commission to which he was "entitled to" applying the guidelines of SCPA 2307.

In an article 81 proceeding, one or more guardians will be appointed "to satisfy either personal or property management needs of an incapacitated person," taking into account "the personal wishes, preferences and desires of the person, and . . . afford[ing] the person the greatest amount of independence and self-determination and participation in all the decisions affecting such person's life" (Mental Hygiene Law § 81.01). When first enacted, the Mental Hygiene Law specified that in setting a plan for the reasonable compensation of a guardian, the court could utilize a compensation plan "similar" to the guidelines used by Surrogate's court for setting the commission for a

trustee: "(a) The court shall establish, and may from time to time modify, a plan for the reasonable compensation of the guardian. The plan for compensation of the guardian may be similar to the compensation of a trustee pursuant to section two thousand three hundred nine of the surrogate's court procedure act; however, the plan must take into account the specific authority of the guardian to provide for the personal needs and/or property management for the incapacitated person" (Mental Hygiene Law § 81.28 [a], as added by L 1992, ch 698, § 3).

SCPA 2309 sets forth the commission of trustees under wills of persons dying, or lifetime estates established after August 31, 1956, setting annual commissions according to a schedule that is different from SCPA 2307. In appointing Goldstein, the court did not use SCPA 2309, but used 2307. SCPA 2307 is best described as awarding "commissions" on a sliding scale; the smaller the estate, the larger a percentage the fiduciary appointed will receive as a fee, but with a larger estate, the percentage is smaller.

In 2004, the Mental Hygiene Law was amended and currently provides as follows:

"(a) The court shall establish, and may from time to time modify, a plan for the reasonable compensation of the guardian or guardians. The plan for compensation of such guardian must take into account the specific authority of the guardian or guardians to provide for the personal needs and/or property management for the incapacitated person, and the services provided to the incapacitated person by such guardian.

"(b) If the court finds that the guardian has failed to discharge his or her duties satisfactorily in any respect, the court may deny or reduce the compensation which would otherwise be allowed" (Mental Hygiene Law § 81.28).

Thus, although the Mental Hygiene Law, as originally enacted, encouraged courts to consider a compensation plan similar to the guidelines set forth in the SCPA after the statute was amended in 2004, all references to the SCPA were eliminated. The Mental Hygiene Law does not provide any formula or guideline for the court to follow in setting compensation for an article 81 guardian, nor does it refer to such compensation as a "commission." The only requirement is that the court "must take into account the specific authority of the guardian or guardians to provide for the personal needs and/or property management for the incapacitated person, and the services provided to the incapacitated person by such guardian" (Mental Hygiene Law § 81.28). This is because oftentimes it is difficult to predict at the inception of a guardianship

proceeding the full extent of the work to be performed or the services a guardian will be called upon to provide (*see* Supreme Court of the State of New York Appellate Division: Second Judicial Dept, Best Practices, Guardianship Proceedings, Apr. 15, 2005, http://www.nycourts.gov/courts/ad2/pdf/Best-PracticesHandbook_1.pdf, at 5 [accessed Dec. 23, 2016]). Moreover, in an article 81 proceeding, a guardian is appointed to manage the financial affairs of someone who is incapacitated, not deceased, requiring the court to fix a guardian's compensation so that it provides the person appointed with reasonable compensation, but not a windfall at the incapacitated person's expense. Such compensation should, therefore, be related to and commensurate with the guardian's efforts and "not necessarily related to the dollar value of the ward's assets" (*Matter of Lindsay*, 276 AD2d 451, 452 [1st Dept 2000]). It is within the court's discretion to determine what constitutes "fair and reasonable compensation" based upon the nature of the appointment (*Lindsay* at 452; *see also Matter of Frank C. [Hyman]*, 102 AD3d 683, 685 [2d Dept 2013]). This Court has the discretion to disturb a determination of the Supreme Court if it improvidently exercised its discretion in reducing the commission originally awarded (*see Frank C. [Hyman]* at 685; *see also Matter of Joshua H. [Grace N.]*, 80 AD3d 698 [2d Dept 2011], *lv denied* 16 NY3d 711 [2011]).

At the outset, we reject Goldstein's argument that the court was required to find misfeasance or misconduct on his part in order to deny him a full commission calculated under the SCPA. Under the Mental Hygiene Law, Goldstein is entitled to no more than "reasonable compensation" for his services, and there is no mathematical formula in the Mental Hygiene Law that the motion court failed to apply or disregarded. A court may, and in this case did, with respect to Goldstein's services as temporary guardian, choose to compensate a guardian in quantum meruit, using an hourly rate (*Matter of Arnold O.*, 256 AD2d 764, 766 [3d Dept 1998]). Whether using the hourly rate approved by the court of $350 per hour or using his usual hourly rate of $495, Goldstein was well compensated for his time.*

A related argument indirectly mounted by Goldstein is that he is entitled to a commission for the entire time that he managed Ascher's property. Whether this means the accounting period of January 31, 2014 through April 30, 2014, or from

---

* This is true, even assuming Goldstein worked 10-hour days during the 20-day period from March 20 through April 8, 2014 in which he served as Ascher's full time guardian: $495/hr x 10 hrs x 20 days = $99,000.

February 13, 2014 until April 8, 2014 (the date of Ascher's death), the result would be that Goldstein's compensation (commission) overlapped with the compensation that was set in quantum meruit for his services as Ascher's temporary guardian.

In rejecting a calculation of Goldstein's compensation on a commission basis, as the original appointment order and judgment provides, the motion court did not, as Goldstein argues, violate the doctrine of the law of the case. Under the doctrine of law of the case, the parties or those in privity are "preclud[ed] [from] relitigating an issue decided in an ongoing action where there previously was a full and fair opportunity to address the issue" (*Town of Massena v Healthcare Underwriters Mut. Ins. Co.*, 40 AD3d 1177, 1179 [3d Dept 2007]). The merits of Goldstein's fee application were never adjudicated by the court that issued the original order and judgment appointing him, and it was only when he sought approval of his compensation that the issue arose. In any event, the doctrine of the law of the case does not and cannot apply to this Court, or prevent us from reviewing an order before us on appeal to decide whether it was improvidently made (*see People v Evans*, 94 NY2d 499, 503 n 3 [2000]).

Since the motion court set forth the factors it considered in deciding not to fix Goldstein's compensation in accordance with the guidelines set forth in the SCPA, taking into account not only the duration of his appointment but also the skills he employed in handling the issues that he was confronted with, the motion court did not improvidently abuse its discretion in fixing such fees at $100,000 plus disbursements for Goldstein's services as a full guardian during the three-week period of his appointment. Concur—Friedman, J.P., Andrias, Moskowitz, Gische and Gesmer, JJ.

