Aspen Specialty Ins. Co. v RLI Ins. Co., Inc. (2021 NY Slip Op 02092)





Aspen Specialty Ins. Co. v RLI Ins. Co., Inc.


2021 NY Slip Op 02092


Decided on April 06, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 06, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick
Angela M. Mazzarelli Anil C. Singh Lizbeth González


Index No. 652215/18 Appeal No. 13420 Case No. 2020-04416 

[*1]Aspen Specialty Insurance Company, Plaintiff-Respondent,
v
RLI Insurance Company, Inc., Defendant-Appellant.



Defendant appeals from the order of the Supreme Court, New York County (Arthur F. Engoron, J.), entered on or about November 2, 2020, which granted plaintiff's motion for summary judgment declaring that defendant's insurance policy is next in priority after a policy issued by Ironshore Indemnity, Inc. to cover any loss arising out of the underlying personal injury action, before plaintiff's policy is triggered, and denied defendant's cross motion for summary judgment declaring that its policy does not provide additional insured coverage in the underlying action.




Ford Marrin Esposito Witmeyer & Gleser, LLP, New York (Joseph D'Ambrosio and Jon R. Grabowski of counsel), for appellant.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., New York (Scott A. Rader and Marc L. Abrams of counsel), for respondent.



Renwick, J.P. 


Plaintiff Aspen Specialty Insurance Company commenced this action seeking a declaration that the excess insurance policy issued by RLI Insurance Company, Inc. was next in order of coverage for a personal injury action, in which Aspen and RLI's common insured, Alphonse Hotel Corporation, was a defendant. The issue in this case is whether RLI, an excess insurer with a follow form policy, is bound by a prior judicial determination of this Court that the primary policy issued by Ironshore Indemnity Inc., which underlies RLI's excess policy, covers the defendant in the personal injury action, Alphone, as an additional insured. In the prior declaratory judgment action between Aspen and Ironshore, this Court declared that the language in the additional insured endorsement extends coverage broadly to any injury causally linked to the named insured, which was satisfied in this case because the loss involved an employee of the named insured who was injured while performing the named insured's work under the contract with the additional insured. RLI argues that it is not bound by this Court's prior determination because it was not part of the prior declaratory judgment action. In the present declaratory judgment action, RLI wishes to relitigate the issue of whether Ironshore's policy covers Alphonse as an additional insured. RLI relies upon the 2017 Court of Appeals decision in Burlington Ins. Co. v NYC Tr. Auth. (29 NY3d 313 [2017]), which interpreted language in an additional insured endorsement similar to the language here as covering the additionally insured party, vicariously, only for negligent acts of the named insured. It is undisputed in the instant case that the named insured was not in control of the instrumentality of the accident that caused the underlying personal injuries. For the reasons that follow, we agree that RLI is not bound by our prior determination and that it is entitled to a declaration that it has no obligation to defend or indemnify in the underlying personal injury action.
Factual and Procedural Background
The unique circumstances of this case are essentially undisputed. In May 2013, Michael Patalano[*2], an employee of Transel Elevator & Electric, Inc., commenced a personal injury action against Alphonse, as owner of the Carter Hotel. Patalano, on October 12, 2012, while working within the scope of his employment with Transel, exited the elevator shaft on the 24th floor of the Carter Hotel building and began to descend the interior stairway; a step collapsed, and he fell down the stairway. The complaint alleges that the accident and resulting injuries were caused by Alphonse's negligence in allowing an unsafe condition to exist on the hotel premises.
Transel was not a defendant, and the complaint did not allege negligence against Transel. However, a service agreement between Transel and Alphonse required that Transel obtain general liability insurance and excess liability coverage and name Alphonse as an additional insured. Transel obtained general liability insurance from Ironshore, with a limit of coverage of $1,000,000 per occurrence. The policy included an endorsement providing coverage as an additional insured "[a]s required by written contract," but only for bodily injury "caused, in whole or in part, by '[Transel's] work' at the location."
Transel also obtained excess liability coverage from RLI, which provided, in part, that it would pay the net loss from an occurrence insured by the primary insurance, but only once the primary insurance had been exhausted. The policy states that it "is subject to all of the conditions and agreements . . . of and shall follow the underlying insurance in all respects." The underlying insurance is identified as the above-referenced Ironshore policy. The RLI policy includes an "other insurance" endorsement that states: "To the extent required under written contract and provided by the underlying insurance, this policy will apply as primary insurance, excess of scheduled underlying insurance, to additional insureds [,] and other insurance which may be available to such additional insureds will be non-contributory."
Alphonse obtained liability insurance from Aspen. The policy provides that it is primary "except when Paragraph b. below applies." Paragraph b. states that the Aspen policy shall be excess over any other primary insurance available to Alphonse covering liability for damages "arising out of the premises or operations . . . for which you have been added as an additional insured." When the Aspen policy "is excess over other insurance," it pays the loss that exceeds the sum of the total amount that all such "other insurance" would pay in the absence of this insurance.
In July 2013, Alphonse tendered its defense to Transel under the Ironshore policy. Ironshore denied additional insured status to Alphonse on the ground that the allegations in Patalano's action were solely related to the negligence of Alphonse. Aspen (Alphonse's insurer) then commenced a declaratory judgment action against Ironshore (Transel's primary insurer), seeking coverage for Alphonse under the Ironshore policy as [*3]an additional insured. RLI was not a named party even though its excess policy follows the form of Ironshore's primary policy.
In July 2015, Supreme Court granted Aspen's motion for partial summary judgment declaring that Alphonse was an additional insured on the Ironshore policy and that Ironshore was required to defend Alphonse in the underlying personal injury action. The court reasoned that, in an additional insured endorsement, the phrase losses "caused by" the named insured's "acts or omissions" did not differ materially from the phrase "liability arising out of" the named insured's work, and concluded that additional insured coverage was triggered because Patalano was performing contract work, and it was immaterial whether Transel was actually at fault. On or about December 9, 2015, upon Aspen's motion to reargue, the court modified its prior order to the extent of finding that Ironshore insured Alphonse in the underlying personal injury action on a primary basis and that Aspen's coverage was excess to Ironshore's policy. The declaratory judgment action was marked as "disposed / concluded" on March 9, 2016.
Ironshore appealed from the July 2015 order, and this Court affirmed (Aspen Specialty Ins. Co. v Ironshore Indem. Inc., 144 AD3d 606 [1st Dept 2016]). As indicated, this Court relied primarily upon Burlington Ins. Co. v NYC Tr. Auth. (132 AD3d 127, 135 [1st Dept 2015]) and analogous decisions in which this Court has held that, where a policy endorsement extends coverage to additional insureds for losses "caused by" the named insured's "acts or omissions or operations, the existence of coverage does not depend upon a showing that [the named insured's] causal conduct was negligent or otherwise at fault" (Aspen, 144 AD3d at 607 [internal quotation marks omitted]). Thus, this Court found that Alphonse was "entitled to coverage as an additional insured under the Ironshore policy with respect to the claim of injuries sustained by Transel's employee [Patalano] when he lost his footing on the hotel stairway, which resulted from his 'acts or omissions' while performing his work" (id. at 606). Ironshore took no further action and did not seek review by the Court of Appeals.
Meanwhile, in 2017, the Court of Appeals reversed this Court's decision in Burlington, holding that coverage under a policy restricted to liability "caused, in whole or in part" by the acts or omissions of the named insured applies only to injuries "proximately caused by the named insured," thus requiring a showing that the named insured's causal conduct was negligent or otherwise at fault (Burlington Ins. Co. v NYC Tr. Auth., 29 NY3d 313, 317 [2017]).
Although the Aspen/Ironshore declaratory judgment action had been marked as disposed, Ironshore moved to renew the prior motions. Supreme Court denied Ironshore's motion. The court acknowledged that the rule set forth by Burlington would have required a different result on the prior motions, i.e., that Alphonse [*4]would not have been an additional insured under Ironshore's policy. However, it found that Ironshore's motion was untimely, as the case had been marked as "disposed" in December 2016, and Ironshore had appealed to this Court but failed to appeal from this Court's decision to the Court of Appeals. The court recognized that the result may "seem harsh," but explained that renewal was time-barred. Ironshore appealed from the denial of its motion for renewal. This Court affirmed, stating that Alphonse's entitlement to additional insured status under the Ironshore policy had been "conclusively adjudicated," the time to appeal had expired, and that renewal based on Burlington was "no longer available" (Aspen Specialty Insur. Co. v Ironshore Indem. Inc., 167 AD3d 420, 420 [1st Dept 2018], lv dismissed 33 NY3d 1049 [2019]).
In May 2018, Aspen commenced this action against RLI, seeking a declaration that the RLI policy was the next in order of priority for the underlying personal injury action and that RLI must make its policy available. RLI answered the complaint and counterclaimed, seeking a declaration that it had no obligation to defend or indemnify Alphonse. Aspen moved for summary judgment, arguing, in sum, that the RLI policy follows the form of the Ironshore policy and so it must also provide Alphonse coverage, as an additional insured, and that the RLI policy applied as primary insurance while Aspen's was excess. RLI cross-moved for summary judgment, arguing that the Court of Appeals in Burlington interpreted the pertinent language to require coverage only if the named insured was at fault, which Transel was not; and that the law of the case doctrine did not apply because RLI was not a party to the prior declaratory judgment action between Aspen and Ironshore. Supreme Court granted Aspen's motion and denied RLI's cross motion, and declared that RLI's policy was primary to Aspen's on the ground that its prior ruling that Alphonse was an additional insured under the Ironshore policy was the law of the case. RLI appealed, and we now reverse.
Discussion
Initially, contrary to Supreme Court's determination, we find that the doctrine of the law of the case does not apply to bind RLI to the prior judicial determination of this Court, that the underlying primary policy covers Alphonse in the personal injury action as an additional insured. "The doctrine of the law of the case seeks to prevent relitigation of issues of law that have already been determined at an earlier stage of the proceeding" (Brownrigg v New York City Hous. Auth., 29 AD3d 721, 722 [2d Dept 2006]; see also People v Evans, 94 NY2d 499, 504 [2000] [the doctrine is intended to eliminate inefficiency and disorder that would result if courts of coordinate jurisdiction "were free to overrule one another in an ongoing case"]). It applies to prevent the "parties or those in privity" from relitigating "an issue decided in an ongoing action where there previously was a full and fair opportunity [*5]to address the issue" (Matter of Goldstein v Zabel, 146 AD3d 624, 631 [1st Dept 2017], lv denied 29 NY3d 918 [2017]; see Chanice v Federal Express Corp., 118 AD3d 634, 635 [1st Dept 2014] [since FedEx was not a party at the time that the plaintiff moved to amend the complaint, it was not precluded from moving to dismiss the claims asserted in the amended complaint]). It "generally operates to preclude successive motions by the same party upon the same proof" (Ruiz v Anderson, 96 AD3d 691, 692 [1st Dept 2012] [internal quotation marks omitted]). Where applicable, the trial court is bound by the prior ruling "absent a showing of subsequent evidence or change of law" (Delgado v City of New York, 144 AD3d 46, 47 [1st Dept 2016] [internal quotation marks omitted]).
Apart from the fact that there was a subsequent change in the law, the determination that Alphonse was an additional insured under the Ironshore policy is not the law of the case because it was made in a prior, separate proceeding, not this ongoing action. RLI was not a party to the prior proceeding. For some unexplained reason, Aspen did not name RLI in the original declaratory judgment action. That RLI chose not to intervene is of no moment because it had no duty to do so. What is significant is that RLI had no involvement in the prior proceeding and had not previously contested the coverage issue. Accordingly, the doctrine of the law of the case does not preclude RLI from relitigating the coverage issue of whether Alphone qualified as an additional insured under the "acts or omissions" terms of the Ironshore policy that were incorporated into RLI's policy.
For similar reasons, we reject Aspen's argument that the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) bind RLI to our prior coverage determination. Res judicata applies only when a claim between the same parties, and those in privity with them, has previously been brought to a final determination (see Rojas v Romanoff, 186 AD3d 103, 107 [1st Dept 2020]). Unlike res judicata, collateral estoppel may be used by one who was not a party to the prior litigation (id. at 107-108; see also Buechel v Bain, 97 NY2d 295 [2001]; Gramatan Home Investors Corp. v Lopez, 46 NY2d 481 [1979]). Like res judicata, however, the party against whom claim preclusion is sought must also have been a party to the prior litigation (id.). Thus, to bind a claim or issue against a party, that party must have been a party to the prior litigation. RLI had no involvement in the prior proceeding regarding Alphonse's additional insured status under the Ironshore primary policy.
Nor are we persuaded by Aspen's argument that our prior judicial determination that Alphonse is an additional insured under Ironshore's primary policy  is still binding on RLI because RLI's excess policy is a "follow-form" policy which incorporates the terms of the primary policy. To be sure, RLI does not dispute that its excess policy [*6]is a true "follow-form" policy, which provides coverage pursuant to what is commonly referred to as a "following" certificate or policy. Under such a provision, the excess insurer provides coverage subject to exactly the same terms and conditions as those of the underlying insurance (see 1 New Appleman New York Insurance Law § 16.04; see also Matter of Viking Pump., Inc., 27 NY3d 244 [2016]). In other words, if the underlying policy covers certain conduct, the excess policy does as well.
Nevertheless, the nature of this policy does not alter the outcome of this case. There is no basis for binding RLI to the prior coverage determination. A follow-form policy was never intended to bind an excess carrier to a judicial interpretation of an underlying policy in a related but wholly non-controlling decision. Our present function is to interpret RLI's excess policy according to current New York law. Absent the application of the doctrines of res judicata or collateral estoppel, we find no basis upon which to bind RLI to an interpretation of an underlying policy made in an action to which it was not a party or in privity with a party (see Matter of Midland Ins. Co., 269 AD2d 50, 62 [1st Dept 2000], abrogated in part on other grounds 16 NY3d 536 [2011]; Matter of Midland Ins. Co., 20 Misc 3d 488, 507 [Sup Ct, NY County 2008], revd 71 AD3d 221 [1st Dept 2010], affd 16 NY3d 536 [2011]; see also Travelers Ins. Co. of Illinois v Eljer Mfg., Inc., 307 Ill App 3d 872, 884-885 [Ill App 1999], revd in part on other grounds 197 Ill 2d 278 [Ill 2001]).
Aspen has provided no authority for its novel argument that a follow-form excess policy is intended to contractually bind the excess insurer to a judicial determination of coverage made in an action in which the excess carrier was not a party. On the contrary, in Matter of Midland Ins. Co. (269 AD2d 50 [1st Dept 2000]), this Court rejected a similar interpretation of a follow-form policy. This Court considered whether the follow form language in an excess policy would bind Midland (the excess insurer) based on a New Jersey federal district court's prior determination that the underlying coverage had been triggered. This Court found that "[u]nder normal circumstances," given the follow form language of the excess policy, the New Jersey court's interpretation would be binding on the excess insurer (id. at 62). Although the definitional language of the underlying policy was incorporated, this Court did not simply adopt the New Jersey court's interpretation. Rather, this Court explained, the underlying policy was subject to New Jersey law, while the Midland policy was interpreted under New York law (id. at 63). Thus, although the language of the underlying policy was incorporated, it would be interpreted separately.
It bears noting that our holding is not intended to undermine the rule that, under normal circumstances, if the underlying policy covers certain conduct, the excess follow-form policy does as [*7]well (see Federal Ins. Co. v. International Bus. Machs. Corp., 18 NY3d 642, 646 [2012]; Union Carbide Corp. v Affiliated FM Ins. Co., 16 NY3d 419, 424 [2011]). However, such a determination must take place in a context where both the carrier of the underlying primary policy and the carrier of the excess policy have had a full and fair opportunity to contest the pertinent coverage issues.
Ultimately, Aspen's legal predicament, that it is unable to take advantage of this Court's prior determination requiring Ironshore's underlying primary policy to cover Alphonse, its insured in the personal injury action, is very much a product of its own making. Nothing prevented Aspen from including RLI in its prior declaratory judgment action against Ironshore. Had Aspen done so, the prior determination would have been binding on RLI. By failing to do so, it deprived RLI of a full and fair opportunity to contest our prior coverage determination. Under the circumstances, this Court is not in a position to ignore the recent Court of Appeals precedent in Burlington that supports RLI's position in this declaratory judgment action that it has no obligation to provide excess coverage to Alphonse, a defendant that would not have been an additional insured on the underlying policy under current law.
Accordingly, the order of Supreme Court, New York County (Arthur F. Engoron, J.), entered on or about November 2, 2020, which granted plaintiff's motion for summary judgment declaring that defendant's insurance policy is next in priority after a policy issued by Ironshore Indemnity, Inc. to cover any loss arising out of the underlying personal injury action, before plaintiff's policy is triggered, and denied defendant's cross motion for summary judgment declaring that its policy does not provide additional insured coverage in the underlying action, should be reversed, on the law, without costs, the motion denied and the cross motion granted. The Clerk is directed to enter judgment declaring that defendant has no obligation to defend or indemnify in the underlying action.
Order Supreme Court, New York County (Arthur F. Engoron, J.), entered on or about November 2, 2020, reversed, on the law, without costs, the motion denied, and the cross motion granted. The Clerk is directed to enter judgment declaring that defendant has no obligation to defend or indemnify in the underlying action.
Opinion by Renwick, J.P. All concur.
Renwick, J.P., Mazzarelli, Singh, González, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 6, 2021