| **JDS Constr. Group LLC v Copper Servs., LLC** |
| 2024 NY Slip Op 34551(U) |
| December 23, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 656912/2020 |
| Judge: Andrew Borrok |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 53

------------------------------------------------------------------------------------X

JDS CONSTRUCTION GROUP LLC,

Plaintiff,

- v -

COPPER SERVICES, LLC,TALISMAN CASUALTY
INSURANCE COMPANY, LLC,111 WEST 57TH
PROPERTY OWNER LLC,111 CONSTRUCTION
MANAGER LLC,MICHAEL STERN, KEVIN MALONEY

Defendant.

------------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 656912/2020 |
| **MOTION DATE** | 08/08/2024, 09/16/2024 |
| **MOTION SEQ. NO.** | 017 018 |

**DECISION + ORDER ON MOTION**

HON. ANDREW BORROK:

The following e-filed documents, listed by NYSCEF document number (Motion 017) 601, 602, 603, 604, 605, 606, 607, 608, 609, 610, 611, 612, 613, 614, 615, 616, 617, 618, 619, 620, 621, 622, 623, 624, 625, 626, 627, 628, 629, 630, 637, 638, 639, 640, 641, 642, 643, 644, 645, 646, 647, 648, 649, 650, 651, 652, 661, 662

were read on this motion to/for                        DISMISSAL                        .

The following e-filed documents, listed by NYSCEF document number (Motion 018) 631, 632, 653, 654, 655, 656, 657, 658, 659, 663

were read on this motion to/for                        DISMISSAL                        .

Upon the foregoing documents and for the reasons set forth below, JDS Construction Group

LLC (**JDS Construction**), 111 West 57th Property Owner LLC (the **Owner**), and 111

Construction Manager LLC (the **Manager**, and together with JDS Construction and the Owner,

hereinafter, collectively, **JDS**)'s motion (Mtn. Seq. No. 017) to dismiss Copper Services, LLC

(**Copper**)'s counterclaims (the **Counterclaims**; NYSCEF Doc. No. 639) is GRANTED to the

extent that the causes of action sounding in quantum meruit (second counterclaim), unjust

enrichment (third counterclaim), lien foreclosure (fifth counterclaim), trust fund diversion (sixth

counterclaim), and accounting of trust funds (seventh counterclaim) are dismissed.

656912/2020  JDS CONSTRUCTION GROUP LLC vs. COPPER SERVICES, LLC
Motion No.  017 018

Page 1 of 18

Michael Stern and Kevin Maloney (collectively, the **Individual Counterclaim Defendants**)'s motion (Mtn. Seq. No. 018) to dismiss the Counterclaims is GRANTED solely to the extent that the cause of action sounding in trust fund diversion (sixth counterclaim) is dismissed as against the Individual Counterclaim Defendants, and Copper's cross-motion to amend the Counterclaims is DENIED.

## THE RELEVANT FACTS AND CIRCUMSTANCES

Reference is made to (i) a certain Agreement Between Construction Manager and Contractor (the **Construction Contract**; NYSCEF Doc. No. 604), dated April 1, 2016, by and between Copper and the Manager pursuant to which Copper agreed to perform heating, ventilation and air conditioning work (**HVAC**) in connection with a construction project at 105-111 West 57th Street, New York, NY 10019 Block 1010, Lot 25 (the **Project**), (ii) a Decision and Order of the Appellate Division (the **January 2024 Decision**; NYSCEF Doc. No. 580), dated January 25, 2024, and (iii) a Decision and Order of the Appellate Division (the **April 2024 Decision;** NYSCEF Doc. No. 642).

As relevant, on May 4, 2020, and prior to completion of the Project, JDS terminated Copper for defaulting on the Construction Contract by performing its work inadequately and untimely (NYSCEF Doc. No. 602 at 6).  Prior to completion, as discussed previously in the January 2024 Decision, Copper did not serve notice in compliance with the Construction Contract of any concurrent delays prior to termination such that the Surety was entitled to claim concurrent delays as a defense.

**656912/2020   JDS CONSTRUCTION GROUP LLC vs. COPPER SERVICES, LLC**
**Motion No.  017 018**

**Page 2 of 18**

On September 11, 2020, Copper filed ten mechanic's liens against JDS Construction, the Owner, and the Manager in the amount of $6,891,276.38 for "Supplied and Installed HVAC Equipment, Etc." (the **Liens**; NYSCEF Doc. No. 650). On December 10, 2020, JDS Construction commenced this action against Copper and Talisman Casualty Insurance Company, LLC (**Talisman**) for (i) breach of contract, (ii) willful exaggeration of liens, (iii) breach of performance bond, and (iv) breach of payment bond (NYSCEF Doc. No. 1). Subsequently, on September 2, 2021, Copper filed extensions of the Liens (NYSCEF Doc. No. 651).

On October 28, 2021, the Court granted default judgment against Copper, and the Liens were discharged (NYSCEF Doc. No. 642). Copper did not however move this Court for further extension of the Liens (as it had previously done) prior to September 11, 2022, when the one-year statute of limitations expired (NYSCEF Doc. No. 652 at 8-9). Six weeks after the Liens lapsed, however, on October 27, 2022, Copper moved to vacate the Court's default order (NYSCEF Doc. No. 167). This motion the Court denied.

On October 23, 2023, JDS Construction moved for summary judgment against Talisman on the grounds that Talisman was liable for Copper's defaults as Copper's surety (NYSCEF Doc. No. 499). Pursuant to a prior Decision and Order (the **Prior Decision**; NYSCEF Doc. No. 582), dated February 9, 2024, the Court granted summary judgment against Talisman.

On appeal, in the January 2024 Decision, the Appellate Division affirmed the Prior Decision, holding that JDS was entitled to summary judgment against the surety, Talisman:

> Order, Supreme Court, New York County (Andrew Borrok, J.), entered March 29, 2023, which, insofar as appealed from as limited by the briefs, denied defendant Talisman Casualty Insurance Company LLC's motion to compel discovery except to the extent of ordering plaintiff to provide an affidavit that it does not possess

**656912/2020   JDS CONSTRUCTION GROUP LLC vs. COPPER SERVICES, LLC**
**Motion No.  017 018**

**Page 3 of 18**

3 of 18

[* 3]

any other documents relating to, among other things, additional delay costs, and order, same court and Justice, entered on May 19, 2023, which granted plaintiff's motion for summary judgment dismissing any defense of concurrent delays asserted by Talisman unanimously affirmed, without costs.

In light of the undisputed failure of defendant Copper Services, LLC to comply with a contractual requirement to provide timely notice of an alleged cause of its delay which was a condition precedent to deeming the alleged cause to be a valid excuse for the delay, the court properly dismissed Talisman's affirmative defense of concurrent delays to Copper's work (*see Hunts Point Multi-Serv. Ctr. v Terra Firma Constr. Mgt. & Gen. Contr.*, 5 AD3d 183, 184 [1st Dept 2004]). The court properly invoked the principle that a "surety . . . stands in the shoes of [its] principal and can avail [it]self of only those defenses available to [the principal]" (*General Phoenix Corp. v Cabot*, 300 NY 87, 95 [1949]). Talisman's arguments against enforcing the provisions of the contract between plaintiff and Copper and the bonds issued by Talisman, which expressly incorporated the contract, are unavailing (*cf. Matter of Sciame Constr. LLC v Re:Source N.J., Inc.*, 157 AD3d 627 [1st Dept 2018]).

Because Copper's noncompliance with the notice requirement waived any defense of concurrent causes of delay, the court providently exercised its discretion in denying Talisman's motion to compel discovery of records referring to or related to causes of delay.

Talisman fails to make "a clear showing" that the court improvidently exercised its "broad discretion over the discovery process" (*Rodney v City of New York*, 192 AD3d 606, 606 [1st Dept 2021]) in denying Talisman's request for plaintiff's internal communications regarding plaintiff's alleged nonpayment of Copper or its subcontractors. We note that plaintiff disclosed other documents pertaining to the same subject matter, and that the court, in a November 1, 2022 order, granted leave for Talisman to make specific discovery requests for any necessary additional documents.

(NYSCEF Doc. No. 580).

Also on appeal, in the April 2024 Decision, the Appellate Division held that the default judgment

entered against Copper should have been vacated because Copper demonstrated a reasonable

excuse for its default (*i.e.*, its lawyer abandoned his obligation to file an answer and response)

**656912/2020  JDS CONSTRUCTION GROUP LLC vs. COPPER SERVICES, LLC**
**Motion No.  017 018**

**Page 4 of 18**

4 of 18

[* 4]

and a potentially meritorious defense to the willful exaggeration of lien claim and the breach of

contract based on certain alleged underpayments made under the Construction Contract:

> Order, Supreme Court, New York County (Andrew Borrok, J.), entered March 1, 2023, which, insofar as appealed from, denied defendant Copper Services LLC's motion to vacate a default judgment, same court and Justice, entered October 28, 2022, in favor of JDS Construction Group, LLC and against defendant Copper, unanimously reversed, on the law, with costs, and the motion granted. Appeal from order, same court and Justice, entered May 19, 2023, which denied Copper's motion to renew and reargue, unanimously dismissed, without costs, as academic and taken from a nonappealable paper, respectively.

> Copper sufficiently demonstrated a reasonable excuse in support of its motion to vacate the default judgment entered against it. Its counsel abandoned his duties to file an answer and respond to the default judgment motion, despite having advised Copper that he was being paid by Copper's surety to appear on Copper's behalf. Copper's sole manager and member's challenging personal circumstances also guide our determination. "Although [Copper's] defaults were more than isolated incidents, it cannot be said based on this record, that they constituted a pattern of willful default and neglect, and there [is] no claim of prejudice" (*Soffer v Montanez*, 198 AD3d 606, 607 [1st Dept 2021]).

> Copper also sufficiently raised a potentially meritorious defense to the willful exaggeration of lien claim, based on Copper's liens having been discharged on default, rather than on a finding of willful exaggeration (*see Wellbilt Equip. Corp. v Fireman*, 275 AD2d 162, 165 [1st Dept 2000]). Copper further raised a potentially meritorious defense to plaintiff's breach of contract claim based on the issue of plaintiff's own default and underpayment under the parties' agreement. Based on these findings, we find that vacatur of the default judgment was warranted (*see SOS Capital v Recycling Paper Partners of PA, LLC*, 220 AD3d 25, 38-39 [1st Dept 2023]).

(NYSCEF Doc. No. 590). These decisions are the law of the case.

Subsequently, on June 21, 2024, Copper filed an Answer and the Counterclaims against JDS

Construction and added the Owner, the Manager, and the Individual Counterclaim Defendants as

additional counterclaim defendants pursuant to CPLR § 3019 (NYSCEF Doc. No. 639).

**656912/2020  JDS CONSTRUCTION GROUP LLC vs. COPPER SERVICES, LLC**
**Motion No.  017 018**

**Page 5 of 18**

In the Counterclaims, Copper brings causes of action sounding in (i) breach of contract against JDS Construction and the Manager (first counterclaim), (ii) quantum meruit against JDS Construction and the Manager (second counterclaim), (iii) unjust enrichment against JDS Construction and the Manager (third counterclaim), (iv) violation of General Business Law §756-a against JDS Construction and the Manager (fourth counterclaim), (v) lien foreclosure against JDS Construction and the Manager (fifth counterclaim), (vi) trust fund diversion against JDS Construction, the Owner, the Manager, and the Individual Counterclaim Defendants (sixth counterclaim), and (vii) accounting of trust funds against JDS Construction, the Owner, and the Manager (seventh counterclaim).

As relevant to the instant motions, the Counterclaims allege that JDS failed to pay and improperly reduced certain of Copper's monthly requisitions and that Copper sent notices of non-payment for said requisitions:

> 17. Copper responded to the Contractor's improper attempt to reduce its payment application advising that "we do not accept your reduction of percentage … for period ending 01/31/17" as "[Copper's] requisition percentage stand as submitted work completed." Upon information and belief, the Contractor failed to provide sufficient justification for its actions.
>
> . . . .
>
> 23. As of the period ending June 30, 2017, the Contractor owed Copper a past due balance in the amount of $1,168,738.87, which had accumulated and was past due in violation of the PPA.
>
> 24. On July 7, 2017, Copper responded to the Contractor's inquiry of the status of delivery of the HVAC equipment on the 34th and 35th floor, that due to nonpayment and reduction of the equipment deposits in Copper's monthly requisition, the Contractor will need to immediately remit the shortfall of $90,000 to have the equipment released from the supplier and delivered to the Project.
>
> . . . .

656912/2020   JDS CONSTRUCTION GROUP LLC vs. COPPER SERVICES, LLC                    Page 6 of 18
Motion No.  017 018

6 of 18

[* 6]

28. On July 27, 2017, Copper, through counsel, demanded that Contractor provide adequate assurances that funds are available to pay Copper for its work in light of the allegations and that it will remit the balance owed in the amount of $1,168,738.87.

29. In response, on August 1, 2017, Contractor, through counsel, responded by failing to provide adequate assurances requested by Copper.

. . . .

31. The Contractor also continued to improperly reduce Copper's monthly requisition, and on October 18, 2017, Copper notified the Contractor that the deductions in the August 2017 and September 2017 payment requisition are unacceptable.

32. In its email, Copper stressed that it "cannot afford to man the [P]roject with a payment of only $60,000 for September".

33. On December 6, 2017, Copper again emailed the Contractor that the $1,203,166.60 deduction to its monthly requisitions are unacceptable and the failure to take into consideration of the amounts owed for the equipment will delay the Project.

. . . .

40. On September 16, 2019, Copper served a written Notice of Nonpayment pursuant to Section 26.1 of the Contract based on the Contractor's failure to pay Requisition Nos. 39 and 40 as well as the Contractor's non-cooperation and interference with approving the Change Orders.

41. As set forth in the letter, the Contractor improperly reduced Copper's Requisition No. 39, covering the period from July 1 to July 30, 2019, in the sum of $819,473.40 to $256,170.17, with $563,303.23 being unpaid, and Copper's Requisition No. 40, covering the period from August 1 to August 31, 2019 in the sum of $784,157.40 to $167,154.30, with $617,003.10 unpaid.

42. On November 7, 2019, Copper sent a second notice of non-payment under Section 26.1 of the Contract, based on the Contractor's failure to pay the amount due on Requisition No. 42, which again was cut without a proper written statement as required under the PPA.

43. As set forth in the letter, the Contractor improperly reduced Copper's Requisition No. 42, covering the period through October 31, 2019, in the sum of $890,137.58 to $244,402.77, with $645,734.81 unpaid.

656912/2020   JDS CONSTRUCTION GROUP LLC vs. COPPER SERVICES, LLC
Motion No.  017 018

Page 7 of 18

7 of 18

[* 7]

44. On December 2, 2019, Cooper sent Contractor the First Cure Notice of Nonpayment and Breach of the Contract, which reiterated the non-payments mentioned in the previous notices, including the undisputed amount approved by the Contractor.

45. The Contractor failed to pay monthly installments for Requisitions Nos. 40, 41, and 42 in the total amount of $465,753.70 when due on August 31, 2019, September 30, 2019, and October 31, 2019, respectively.

(NYSCEF Doc. No. 639 ¶¶ 17, 23-24, 28-33, 40-45).

Subsequently, JDS and the Individual Counterclaim Defendants filed the instant motions to dismiss the Counterclaims (Mtn. Seq. Nos. 17 and 18). In response, Copper filed a crossclaim to amend the Counterclaims (the **Proposed Amended Counterclaims**; NYSCEF Doc. No. 655) to add causes of action sounding in (i) breach of fiduciary duty as against JDS and (ii) aiding and abetting breach of fiduciary duty as against the Individual Counterclaim Defendants (*id.* ¶¶ 197-214).

## DISCUSSION

On a motion to dismiss pursuant to CPLR § 3211 (a) (7), the court must afford the pleadings a liberal construction and accept the facts alleged in the complaint as true, according the plaintiff the benefit of every favorable inference (*Leon v Martinez*, 84 NY2d 83, 87–88 [1994]). The court's inquiry on a motion to dismiss is whether the facts alleged fit within any cognizable legal theory (*id.*). Bare legal conclusions are not accorded favorable inferences, however, and need not be accepted as true (*Biondi v Beekman Hill House Apt. Corp.*, 257 AD2d 76, 81 [1st Dept 1999]). Dismissal may also be sought the grounds that the action is time-barred by the statute of limitations (CPLR § 3211 [a] [5]).

**656912/2020   JDS CONSTRUCTION GROUP LLC vs. COPPER SERVICES, LLC**                    **Page 8 of 18**
**Motion No.  017 018**

8 of 18

## I.      Dismissal is Not Appropriate as to the Breach of Contract Counterclaim

The doctrine of the law of the case seeks to prevent relitigation of issues of law that have already been determined at an earlier stage of the proceeding (*Aspen Specialty Ins. Co. v RLI Ins. Co., Inc.*, 194 AD3d 206, 212 [1st Dept 2021] [holding that a determination made in a prior, separate proceeding was not binding on the defendant where the plaintiff failed to name the defendant as a party in the prior action]).  It applies to prevent the "parties or those in privity" from relitigating "an issue decided in an ongoing action where there previously was a full and fair opportunity to address the issue" (*Matter of Goldstein v Zabel*, 146 AD3d 624, 631 [1st Dept 2017]).

JDS argues that Copper's breach of contract counterclaim must be dismissed under the law of the case doctrine because the Court has already determined in the Prior Decision that Copper had breached the Construction Contract (NYSCEF Doc. No. 602 at 11).  In opposition, Copper argues, in sum and substance, that (i) the April 2024 Decision supersedes the Prior Decision as the law of the case, and (ii) Copper cannot be bound by the Prior Decision because it did not have a full and fair opportunity to litigate its defenses due to the default judgment.  Both parties are not correct.

Copper is not correct. Talisman is the Surety and stepped into the shoes of Copper. As such, Copper is bound by the prior decisions of the Appellate Division enumerated above. Indeed, the Appellate Division held that the Court properly invoked the principle that that a "surety . . . stands in the shoes of [its] principal and can avail [it]self of only those defenses available to [the

**656912/2020  JDS CONSTRUCTION GROUP LLC vs. COPPER SERVICES, LLC**
**Motion No.  017 018**

**Page 9 of 18**

principal]" (*General Phoenix Corp. v Cabot*, 300 NY 87, 95 [1949]). As such, the Appellate Division affirmed the Court's finding that Talisman was bound by Copper's default as surety. Thus, the law of the case precludes Copper from relitigating its concurrent delay defense to JDS's claims.

However, JDS is also not correct that the Prior Decision precludes Copper from bringing a breach of contract claim against JDS. This issue was not in front of the Appellate Division.

In the April 2024 Decision, the Appellate Division held that Copper has a potentially meritorious claim against JDS based on JDS's own default and underpayment under the Construction Contract (NYSCEF Doc. No. 590). These issues are relevant to Copper's breach of contract counterclaim because the alleged breach is based on JDS's underpayment and lack of payment (NYSCEF Doc. No. 639 ¶¶ 83-90). Thus, nothing in the January 2024 Decision or the April 2024 Decision precludes this claim (*Parlux Fragnances, LLC v S. Carter Enterprises,* 204 AD3d 72 (1st Dept 2022). Accordingly, the branch of JDS's motion seeking dismissal of the cause of action sounding in breach of contract (first counterclaim) is denied.

## II.     The Quantum Meruit and Unjust Enrichment Counterclaims Are Dismissed as Duplicative

Quasi-contractual claims like unjust enrichment generally are unavailable when there exists a valid and enforceable contract governing the specific subject matter at issue (*Kramer v Greene*, 142 AD3d 438, 442 [1st Dept 2016]). On the other hand, where "there is a bona fide dispute as to the existence of the contract or the application of the contract in the dispute in issue, a plaintiff

**656912/2020   JDS CONSTRUCTION GROUP LLC vs. COPPER SERVICES, LLC**
**Motion No.  017 018**

**Page 10 of 18**

10 of 18

may proceed upon a theory of quasi contract as well as breach of contract," and need not elect its remedies (*id.* at 441-442).

Copper's quantum meruit and unjust enrichment claims are dismissed because Copper does not dispute the existence of a valid contract such that these claims are duplicative of the breach of contract claim (*Clark-Fitzpatrick, Inc. v Long Is. R. Co.*, 70 NY2d 382, 388 [1987]). As to both the quantum meruit and unjust enrichment causes of action, Copper alleges that JDS failed to compensate Copper for work performed on the Project and thus is liable to Copper for the remaining balance owed in the amount of $6,891,276.38 (NYSCEF Doc. No. 639 ¶¶ 91-103).

Thus, the claims are not independent of the underlying agreement such that the Construction Contract governs the dispute between the parties as to the money damages owed. Accordingly, the causes of action sounding in quantum meruit (second counterclaim) and unjust enrichment (third counterclaim) are dismissed.

### III.    Dismissal is Not Appropriate as to the General Business Law §756-a Counterclaim

JDS argues that Copper's counterclaim brought pursuant to New York General Business Law §756-a (the **Prompt Payment Act**) must be dismissed because the Construction Contract's payment provisions supersede the Prompt Payment Act's requirements:

> (e) **Withholding by Construction Manager.** Construction Manager may require Owner withhold payment to Contractor on account of (1) the failure of Contractor to comply fully with any requirements of this Agreement, including, without limitation, the failure of Contractor to make payments to subcontractors or for material or labor, (2) the failure of Contractor to prevent the filing of liens or claims to avoid the reasonable probability of the filing of liens or claims against Construction Manager, Owner, the Project or Contractor, (3) the failure of Contractor to make payments to union fringe benefit funds, (4) damage to another

**656912/2020   JDS CONSTRUCTION GROUP LLC vs. COPPER SERVICES, LLC**                    **Page 11 of 18**
**Motion No.  017 018**

11 of 18

[* 11]

contractor by reason of acts or failure to act of Contractor, and/or (5) the failure of Contractor to submit detailed reports regarding the status of engineering submissions, procurement, and fabrication operations, as well as a two-week look ahead for work to be completed in the field, on a weekly basis.

(NYSCEF Doc. No. 604 § 36[e]).

In their opposition papers, Copper contends that Section 36(e) of the Construction Contract is

void under the Prompt Payment Act because contractual payment provisions differing from the

requirements of the Prompt Payment Act are rendered unenforceable (*see* GBL § 757[4]).

Initially the Court notes that Copper is not correct that the Construction Contract is void because

the Prompt Payment Act specifically permits a construction manager to withhold payment for a

contractor's deficient performance:

> (i) Upon delivery of an invoice and all contractually required documentation, an owner shall approve or disapprove all or a portion of such invoice within twelve business days. Owner approval of invoices shall not be unreasonably withheld nor shall an owner, in bad faith disapprove all or a portion of an invoice. If an owner declines to approve an invoice or a portion thereof, it must prepare and issue a written statement describing those items in the invoice that are not approved. An owner may decline to approve an invoice or portion of an invoice for:
> (1) Unsatisfactory or disputed job progress;
> (2) Defective construction work or material not remedied;
> (3) Disputed work materials;
> (4) Failure to comply with other material provisions of the construction contract;
> (5) Failure of the contractor to make timely payments for labor including collectively bargained fringe benefit contributions, payroll taxes and insurance, equipment and materials, damage to the owner, or reasonable evidence that the construction contract cannot be completed for the unpaid balance of the construction contract sum; or
> (6) Failure of the owner's architect to certify payment for any or all of the reasons set forth in this section so long as the reasons are included in the owner's written statement of disapproval.

**656912/2020  JDS CONSTRUCTION GROUP LLC vs. COPPER SERVICES, LLC**
**Motion No.  017 018**

**Page 12 of 18**

(*id.* § 756-a[2][i]).

However, dismissal is still not warranted at this stage of the litigation. Copper has adequately alleged its entitlement to payment for the work it performed on the Project, the dates of Copper's notices of non-payment, the amounts and periods of the unpaid installments (NYSCEF Doc. No. 639 ¶¶ 38-45) and JDS's failure to timely object or pay those invoices in violation of the Prompt Payment Act (*id.* ¶ 117). Accordingly, the branch of JDS's motion seeking dismissal of the cause of action sounding in violation of the Prompt Payment Act (fourth counterclaim) is denied.

### IV.     The Lien Foreclosure Counterclaim is Dismissed as Time Barred

Lien Law § 17 provides that a lien shall not last longer than one year after the notice of lien has been filed, unless an action is commenced to foreclose the lien and a notice of pendency is filed within that one-year period:

> No lien specified in this article shall be a lien for a longer period than one year after the notice of lien has been filed, unless within that time an action is commenced to foreclose the lien, and a notice of the pendency of such action, whether in a court of record or in a court not of record, is filed with the county clerk of the county in which the notice of lien is filed, containing the names of the parties to the action, the object of the action, a brief description of the real property affected thereby, and the time of filing the notice of lien; or unless an extension to such lien, except for a lien on real property improved or to be improved with a single family dwelling, is filed with the county clerk of the county in which the notice of lien is filed within one year from the filing of the original notice of lien, continuing such lien and such lien shall be redocketed as of the date of filing such extension.

(NY Lien Law § 17).

**656912/2020   JDS CONSTRUCTION GROUP LLC vs. COPPER SERVICES, LLC**
**Motion No.  017 018**

**Page 13 of 18**

As discussed above, the Liens were due to expire on September 11, 2022 (NYSCEF Doc. No. 652 at 8-9). Copper did not bring an action to foreclose on the Liens until it brought the Counterclaims nearly four years after the notice of liens were filed. Copper argues that it could not commence a foreclosure action due to the default order discharging the Liens (NYSCEF Doc. No. 167) and that they are entitled to reassert the Liens notwithstanding that they did not apply for additional extension (even though they previously) had within the requisite time period. The argument fails.

Copper failed to move to vacate the default until six weeks after the deadline to apply for another extension of the Liens (NYSCEF Doc. No. 167) had already lapsed [although they had done so previously]. As a result, Copper's failure to either commence a foreclosure action or file for another extension of the Liens within one year after the first extension was filed resulted in a lapse of the Liens and are thus barred by the statute of limitations (*see Kamco Supply Corp. v Nastasi & Assocs., Inc.*, 216 AD3d 458, 459 [1st Dept 2003]). Accordingly, the cause of action sounding in lien foreclosure (fifth counterclaim) is dismissed as time barred.

### V. The Trust Fund Diversion and Accounting Counterclaims Against JDS are Dismissed as Time Barred

Lien Law § 77 provides that an action for the enforcement of a trust created by law must be commenced within one year after either (i) the completion of the Project or (ii) the date on which the final payment under the contract was due:

> No such action shall be maintainable if commenced more than one year after the completion of such improvement or, in the case of subcontractors or materialmen, after the expiration of one year from the date on which final payment under the claimant's contract became due, whichever is later, except an action by the trustee for final settlement of his accounts and for his discharge.

**656912/2020 JDS CONSTRUCTION GROUP LLC vs. COPPER SERVICES, LLC**
**Motion No. 017 018**

**Page 14 of 18**

14 of 18

(NY Lien Law § 77[2]).

JDS argues that Copper's trust fund diversion and accounting of trust funds counterclaims must also be dismissed as time barred. Copper does not dispute that the final payment under its contract with JDS was due on May 4, 2020, when JDS terminated Copper, or that the HVAC work for the Project was completed on April 23, 2023 (NYSCEF Doc. Nos. 602 at 9, 662 at 3). Instead, they argue that their trust fund diversion and accounting counterclaims are timely because they relate back to the transactions and occurrences at issue in JDS's complaint (the **Complaint**; NYSCEF Doc. No. 638). They are not right.

The Complaint alleges that Copper breached the Construction Contract by performing deficient work on the Project and failing to pay its subcontractors and suppliers (NYSCEF Doc. No. 638 ¶¶ 39-58). Copper's claim regarding diversion of trust fund money does not relate back to these claims. They relate to Copper's now asserted claim sounding in breach of contract that JDS failed to properly compensate Copper for its work on the Project due to JDS's improper diversion of the construction trust funds (NYSCEF Doc. No. 639 ¶¶ 131-159). Accordingly, the causes of action sounding in trust fund diversion (sixth counterclaim) and accounting of trust funds (seventh counterclaim) are dismissed as untimely as against JDS.

## VI. The Trust Fund Diversion Counterclaim is Dismissed as Time Barred Against the Individual Counterclaim Defendants

The Counterclaims seek to add the Individual Counterclaim Defendants as parties to the lawsuit for the first time by bringing the trust fund diversion counterclaim against them (NYSCEF Doc.

**656912/2020   JDS CONSTRUCTION GROUP LLC vs. COPPER SERVICES, LLC**
**Motion No.  017 018**

**Page 15 of 18**

No. 639 ¶¶ 131-159).  As such, the relation-back doctrine does not apply to them (*see Duffy v Horton Mem'l Hosp.*, 66 NY2d 473, 477 [1985]).  Accordingly, the cause of action sounding in trust fund diversion (sixth counterclaim) is also dismissed as against the Individual Counterclaim Defendants.

## VII.    Copper's Cross-Motion to Amend the Counterclaims is Denied

Pursuant to CPLR § 3025(b), leave to amend shall be freely given, and absent surprise or prejudice, leave should be denied only where "the proposed pleading fails to state a cause of action, or is palpably insufficient as a matter of law" (*Thompson v Cooper*, 24 AD3d 203, 205 [1st Dept 2005]; *Linares v City of New York*, 2024 NY Slip Op 06156 [1st Dept 2024]).

"A breach of fiduciary duty claim is governed by either a three-year or six-year limitation period, depending on the nature of the relief sought.  The shorter time period applies where monetary relief is sought, the longer where the relief sought is equitable in nature" (*Carlingford Ctr. Point Assoc. v MR Realty Assoc.*, 4 AD3d 179, 179-180 [1st Dept 2004]).  A claim for breach of fiduciary duty accrues when all the elements of the tort can be truthfully alleged in a complaint (*IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132, 140 [2009]); *Ganzi v Ganzi*, 183 AD3d 433, 433-434 [1st Dept 2020]).  "Where there is one tortious act complained of, the cause of action accrues at the time that the wrongful act first injured the plaintiff; 'the continuous wrong' doctrine tolls the running of the statute of limitations where there is a series of independent, distinct wrongs rather than a single wrong that has continuing effects" (*Ganzi v Ganzi*, 183 AD3d at 434).

**656912/2020   JDS CONSTRUCTION GROUP LLC vs. COPPER SERVICES, LLC**
**Motion No.  017 018**

**Page 16 of 18**

16 of 18

The Proposed Amended Counterclaims are governed by the three-year statute of limitations because Copper seeks monetary relief (NYSCEF Doc. No. 655 ¶¶ 205, 214). The breach of fiduciary duty and aiding and abetting breach of fiduciary duty counterclaims arise from the improper diversion of trust funds (*id.* ¶¶ 203, 210-211). Copper alleges that it was injured as a result of JDS and the Individual Counterclaim Defendants failing to pay Copper for its work on the Project (*id.* ¶¶ 205, 209, 211, 214). Copper does not dispute that its final payment was due on May 4, 2020, when JDS terminated Copper (NYSCEF Doc. Nos. 602 at 9, 662 at 3). The other misdeeds alleged in the Proposed Amended Counterclaims all occurred prior to that date.

As Copper allegedly suffered such damages more than three years before it sought to add the breach of fiduciary duty counterclaim, it is time barred. Because the breach of fiduciary duty claim fails, the aiding and abetting breach of fiduciary duty claim also fails. Accordingly, Copper's cross-motion to amend the Counterclaims is denied.

The Court has considered the parties' remaining arguments and finds them unavailing.

Accordingly, it is hereby

ORDERED that JDS's motion (Mtn. Seq. No. 017) to dismiss is GRANTED solely to the extent that the causes of action sounding in quantum meruit (second counterclaim), unjust enrichment (third counterclaim), lien foreclosure (fifth counterclaim), trust fund diversion (sixth counterclaim), and accounting of trust funds (seventh counterclaim) are dismissed; and it is further

**656912/2020   JDS CONSTRUCTION GROUP LLC vs. COPPER SERVICES, LLC**
**Motion No.  017 018**

**Page 17 of 18**

17 of 18

ORDERED that the Individual Counterclaim Defendants' motion (Mtn. Seq. No. 018) to dismiss is GRANTED solely to the extent that the cause of action sounding in trust fund diversion (sixth counterclaim) is dismissed as against the Individual Counterclaim Defendants; and it is further

ORDERED that Copper's cross-motion (Mtn. Seq. No. 018) to amend the Counterclaims is DENIED.

20241223164324AB0RR0K318DE0D6F47A#CE3881C1DAEE56BA39E

__12/23/2024__
__DATE__

__ANDREW BORROK, J.S.C.__

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**656912/2020   JDS CONSTRUCTION GROUP LLC vs. COPPER SERVICES, LLC**
**Motion No.  017 018**

**Page 18 of 18**

[* 18]